452 S.E.2d 699

**Michele Lee DONLEY, an Incompetent, who Sues by Margaret Maureen Donley, Natural Parent and Next Friend of Michele Lee Donley, and Margaret Maureen Donley and Vincent W. Donley, Individually and in their Own Right, Plaintiffs Below, Appellants**

v.

**Samuel J. BRACKEN, Jr., M.D.,; John Battaglino, Jr., M.D.; Herman Rubin, M.D.; Rubin, Battaglino & Bracken, a Medical Partnership; and Wheeling Hospital, Inc., a Corporation, Defendants Below, Appellees.**

No. 22254.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 14, 1994.

Decided Dec. 8, 1994.

---

William E. Parsons II, Parsons, Thompson & Kelly, Wheeling, for appellants.

Landers P. Bonenberger, McDermott, Bonenberger, McDermott & Gallaway, Wheeling, for appellees Samuel J. Bracken, Jr., M.D., John Battaglino, Jr., M.D., Herman Rubin, M.D., and Rubin, Battaglino & Bracken.

James F. Companion, Patrick S. Casey, and D. Kevin Coleman, Schrader, Recht, Byrd, Companion & Gurley, Wheeling, for appellee Wheeling Hosp., Inc.

CLECKLEY, Justice:

In this medical negligence case, the appellants and plaintiffs below, Margaret Maureen Donley and Vincent W. Donley, brought suit on behalf of their daughter, Michele Lee Donley, an incompetent, for injuries Michele suffered during her delivery in May of 1970. The Donleys also filed suit for their derivative claims. They appeal an order of the Circuit Court of Ohio County entered November 16, 1993, which granted summary judgment in favor of the appellees and defendants below, the physicians, medical partner-

ship, and hospital.[1] The plaintiffs argue that W.Va.Code, 55–2–15 (1923),[2] the statute relied upon, violates the Equal Protection and Due Process Clauses of the West Virginia State Constitution. They request that we apply the "discovery rule" and order the circuit court to reinstate the action. We find that W.Va.Code, 55–2–15, is constitutional, and we affirm the order of the circuit court.

## I.

On May 22, 1970, Michele Donley was born vaginally, but in a breech position. Shortly after her birth, Michele's parents[3] were informed that she was deprived of oxygen during delivery, suffered brain damage, and developed cerebral palsy. It is undisputed that Michele has always been and will always be incompetent to handle her own affairs. She was raised by her parents until 1989 when she moved to a group home for the mentally handicapped.

During her deposition, Margaret Donley admitted that from the time Michele was born, she and her husband felt that "the doctor had done something wrong." In 1975, Mrs. Donley went to another doctor for the prenatal care of her second child because she did not want Dr. Bracken to deliver the baby after what had happened with Michele.

Likewise, Vincent Donley stated that he had immediate suspicions that the doctor's negligence caused Michele's injuries. After Michele was born, he overheard two nurses discussing a birth at the hospital which developed complications and the doctor panicked and ran out of the delivery room. He told his wife of the conversation, but he was unable to determine if they were referring to Michele's birth. However, he accepted Michele's condition, as his grandparents told him it was something that was meant to be.

The plaintiffs did not seriously entertain the thought of filing a suit for medical negligence until 1990 when Mrs. Donley spoke to a mother who had filed a lawsuit after her son sustained birth injuries. This woman suggested that Mrs. Donley speak with an attorney. The Donleys' first contact with a lawyer concerning Michele's claim occurred in March, 1991, and this complaint was filed on December 8, 1992.

The defendants moved for summary judgment, arguing that Michele's claim and her parents' derivative claims were barred by W.Va.Code, 55–2–15, because the claims were brought more than twenty years after the cause of action had accrued. The circuit court concluded the limitation period was applicable to this case and the suit was dismissed. The plaintiffs appeal.

## II.

The plaintiffs first contend that the circuit court erred as a matter of law when it granted the defendants' motion for a summary judgment. Although there is no genuine dispute over the facts, the plaintiffs specifically argue that the circuit court misconstrued W.Va.Code, 55–2–15, when it held that the twenty year time period was applicable. In support of this conclusion, the plaintiffs suggest that the word "accrue" must be interpreted to toll the statute of limitations until the victim discovers the injury and the cause thereof.

As we state in Syllabus Point 1 *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), "[a] circuit court's entry of summary judgment is reviewed *de novo*." The issue presented here, however, is not a question of fact but one of statutory interpretation. In this context, the plaintiffs urge us to give the word "accrue" both an expansive and liberal

---

1. The defendants below are Samuel J. Bracken, Jr., M.D.; John Battaglino, Jr., M.D.; Herman Rubin, M.D.; Rubin, Battaglino & Bracken, a medical partnership; and Wheeling Hospital, Inc., a corporation.

2. W.Va.Code, 55–2–15, states, in relevant part:
   "If any person to whom the right accrues to bring any such personal action, ... shall be, at the time the same accrues, an infant or insane, the same may be brought within the like number of years after his becoming of full age or sane that is allowed to a person having no such impediment to bring the same after the right accrues, ... except that it shall in no case be brought after twenty years from the time when the right accrues."

3. At the time of Michele's birth, her mother was sixteen years old and her father was eighteen years old.

construction so as to bring within its coverage the "discovery rule." We refuse to do so and hold that the circuit court's interpretation of this statute was correct.

■ To address the issue raised by the plaintiffs, we must first examine the statutory language, bearing in mind that courts should give effect to the legislative will as expressed in the language of the statute. *Moskal v. United States*, 498 U.S. 103, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990); *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985). Interpreting a statute is a legal issue, and hence our review of the statute is plenary.

■ Generally, in examining statutory language, words are given their common usage. If the statutory language is plain and admits of no more than one meaning, and within the constitutional authority of the law-making body which passed it, the duty of interpretation does not arise, and the rules which are to aid ambiguous language need no discussion. *State of West Virginia ex rel. Estes v. Egnor*, 191 W.Va. 36, 443 S.E.2d 193 (1994); *West Virginia Radiologic Tech. Bd. of Examiners v. Darby*, 189 W.Va. 52, 427 S.E.2d 486 (1993); *see United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917).

■ We find that the language of the statute is clear on its face. First, this statute applies only to those plaintiffs suffering from disabilities such as infancy or incompetency. Second, if such a disability exists, then the normal two year statute of limitations is tolled up to two years after the plaintiff has attained the age of majority or has become sane. Third, in cases where the disability has not been cured earlier, the plaintiff has twenty years from the date the cause of action "accrued"[4] to bring a lawsuit. Because Michele was an "infant" and "incompetent" when the cause of action accrued, the

normal two year statute of limitations was tolled and a plaintiff would have had two years after attaining the age of majority or becoming "competent" to perfect a lawsuit. It is conceded, however, that Michele is permanently incompetent and this disability will never be lifted. Therefore, the twenty year provision of W.Va.Code, 55–2–15, is triggered on account of her permanent disability. We conclude that the legislature simply has not provided for any further equitable tolling or application of the "discovery rule." To rule as plaintiff urges would be totally inconsistent with the legislative intendment and would create a result supported by neither the rules of statutory construction nor logic.

■ The general purpose of statute of limitations is to encourage presentation of claims within a reasonable time. The United States Supreme Court stated in *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259, 266 (1979), that such statutes:

"represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.' *Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349[, 64 S.Ct. 582, 586, 88 L.Ed. 788, 792] (1944).... [A]lthough affording plaintiffs what the legislature deems a reasonable time to present their claims, ... [these statutes] protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise."

■ As we have observed, our legislature afforded incompetents and minors an enhanced period of time in which to bring forth their claims. The legislature, however, was equally cognizant of the right of defendants "to be free of stale claims." The last sentence of the statute takes into consideration

4. A cause of action generally accrues when the tort occurs. Syllabus Point 1, *Cart v. Marcum*,

188 W.Va. 241, 423 S.E.2d 644 (1992).

such interests by limiting the right to file suit to twenty years regardless of whether the disability has been lifted. In the wisdom of the legislature, to allow suits to be brought after more than twenty years would place too great a burden on defendants and the judicial system.

We rely on these principles to dispose of the plaintiffs' contention that because Michele is not now and will never be cognizant of her injury, her right to bring the medical negligence action will not "accrue." Thus, as they argue, a permanently incompetent person may not ever have a negligence suit dismissed as time barred. We refuse to adopt such a broad sweeping rule because to do so would ignore a defendant's right to circumvent defending lawsuits more than two decades after the alleged negligence took place. More importantly, such a rule would disregard the plain language of the last sentence of W.Va.Code, 55-2-15. We are not permitted, as the plaintiffs urge, to rewrite the statute and overlook the last sentence.

We hold that in order for a permanently incompetent person to maintain a viable and timely action under W.Va.Code, 55-2-15 (1923), the lawsuit must be brought within twenty years of the date of the wrongful act and the injury. The statute's plain language does not permit a contrary construction, and we can see no reason for reading more into this generous statute of limitations. Thus, absent contrary indications, it is presumed that the legislature did not intend consideration of judicially created exceptions such as the "discovery rule."

The thrust of plaintiffs' argument in resisting the motion for summary judgment rests on the assumption that had the circuit court applied the "discovery rule," their claims would not be time barred. Even if we were to construe W.Va.Code, 55-2-15, to encompass the "discovery rule," the result we reach would not be different. In discussing the history of the "discovery rule," we observed in *Cart v. Marcum,* 188 W.Va. 241, 423

S.E.2d 644 (1992), that the rule "was invoked primarily in medical malpractice actions, because often the results of such malpractice would be apparent only years later." 188 W.Va. at 244, 423 S.E.2d at 647. When determining when the statute of limitations begins to run, we reiterated the following general rule in *Cart:*

> " 'In a medical malpractice case the statute of limitations begins to run at the time the injury is inflicted, or ... when ... the injury is discovered or *when by the exercise of reasonable diligence it should have been discovered.*' Syllabus Point 2, in part, *Hundley v. Martinez,* 151 W.Va. 977, 158 S.E.2d 159 (1967). [Emphasis added]" 188 W.Va. at 244, 423 S.E.2d at 647.

Significantly, this case does not involve a latent injury. Michele's mental retardation and cerebral palsy were diagnosed immediately after her birth. Her parents were also immediately informed that her condition was due to a lack of oxygen during delivery. Michele's parents believed "from day one" that her injury was the result of the physician's negligence. As a coping mechanism, they dismissed their beliefs and went on to the task of caring for Michele. They, therefore, were conscious of all factors necessary for the proper commencement of Michele's claim and their derivative claims. Accordingly, the "discovery rule" is inapplicable to this case. In Syllabus Point 3 of *Cart, supra,* we stated:

> "Mere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of the statute of limitations; the 'discovery rule' applies only when there is a strong showing by the plaintiff that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury."

Finally, the plaintiffs argue that because a committee was never appointed to handle Michele's affairs, her time period for filing this action would still be tolled under the statute. We are cited no authority, nor do we find legal support for the proposition that

the statute of limitations is tolled until a guardian or committee is appointed. For the reasons stated earlier, we decline to adopt a rule which would render incompetents immune to any statute of limitations.

### III.

█ We are asked next to consider whether the general provisions of W.Va.Code, 55–2–15, which tolls the statute of limitations for suits brought by persons under a disability, violates the State's Equal Protection and Due Process Clauses. In Syllabus Point 1 of *State ex rel. Haden v. Calco Awning & Window Corp.*, 153 W.Va. 524, 170 S.E.2d 362 (1969), we state the standard for evaluating such a claim:

" 'When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment.' Point 3, Syllabus, *Willis v. O'Brien*, 151 W.Va. 628 [153 S.E.2d 178] [ (1967) ]."

█ In *Tony P. Sellitti Construction Co. v. Caryl*, 185 W.Va. 584, 592, 408 S.E.2d 336, 344 (1991), we recognize that "a facial challenge to the constitutionality of legislation is the most difficult challenge to mount successfully." Syllabus Point 4 of *Tony P. Sellitti Construction Co., supra*, states:

" ' "In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in

government among the judicial, legislative and executive branches. [*W.Va. Const.* art. V, § 1.] Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt." Syl. pt. 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965).' Syl. pt. 2, *West Virginia Public Employees Retirement System v. Dodd*, 183 W.Va. 544, 396 S.E.2d 725 (1990)."

We begin our discussion by noting that all states have limitation statutes which favor incompetents. See 51 Am.Jur.2d *Limitation of Actions* § 186 at 755 (1970), which states: "Such exception provisions generally prescribe the number of years during which an action may be maintained after the removal of the disability of mental illness or incapacity, while others give the plaintiff, after the removal of the disability, the statutory number of years in which to assert his claim. In accordance with the rule of construction as to exceptions for disability generally, it has been held that statutory exceptions for mental incapacity are to be strictly construed."

W.Va.Code, 55–2–15, is the latter type of statute. Our statute further states, however, that "except that ... [suit] shall in no case be brought after twenty years from the time when the right accrues." [5] The plaintiffs ar-

5. For the relevant text of W.Va.Code, 55–2–15, see note 2, *supra*. See generally, *State ex rel Hi-Ball Contractors, Inc. v. District Court*, 154 Mont. 99, 460 P.2d 751 (1969), in which the Supreme Court of Montana analyzed a similar statute which extended the statute of limitations for incompetents, but stated "except that the time so limited cannot be extended more than five years by any such disability[.]" The Montana Supreme Court noted that such an exception clause had its history in the United States dating back to the New York Statute of 1788, as amended in 1851. The court noted the following legislative history:

" 'The qualification at the end of this section is new. There seems no reason at the present day, for extending the limitation further than is here proposed. Actions can be brought by persons under disability, and the rights of persons in possession require that they should be brought or abandoned[.]' " 460 P.2d at 753.

Similarly, the Supreme Court of Georgia in *Kumar v. Hall*, 262 Ga. 639, 641, 423 S.E.2d 653, 656 (1992), discussed the amendment to that state's tolling statute suspending the running of statutes of limitations against incompetents. The amendment stated:

gue that the bright line rule limiting actions to twenty years denies an incompetent the benefit of the "discovery rule." According to plaintiffs, if a competent person discovers the basis for a tort action twenty-one years after the injury, such a person would still have two years to file a claim. On the other hand, an incompetent person in the same circumstance would be barred by the twenty year rule from bringing a claim. Plaintiffs argue that there is no basis for treating incompetent tort victims differently from competent ones.

At the outset in equal protection cases, we identify the applicable standard of review, which requires us to determine whether the challenged law implicates a fundamental right or discriminates against a class in need of special judicial protection. *Israel by Israel v. W.Va. Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989). In prior equal protection challenges to statutes of limitations, we have characterized such laws as affecting only economic rights, not fundamental rights. We have therefore measured the laws under a lenient standard that requires us to determine whether the classification in question "bears a reasonable relationship to a proper governmental purpose[.]" Syllabus Point 2, in part, *Whitlow v. Bd. of Educ. of Kanawha Cty.*, 190 W.Va. 223, 438 S.E.2d 15 (1993); accord, *O'Neil v. City of Parkersburg*, 160 W.Va. 694, 237 S.E.2d 504 (1977). We see no right implicated in this case that calls for a different conclusion.

The nature of the allegedly discriminated-against class, the mentally disabled, arguably calls for some heightened level of scrutiny. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (Marshall, J., concurring, in part, and dissenting, in part). We need not decide in this case, however, whether in some circumstances discrimination against the mentally disabled must be measured by a more exacting standard than reasonable relationship because we find that the differential treatment accorded the class by W.Va.Code, 55–2–15, does not amount to adverse discrimination.

Certainly, this is not a situation, as in *Cleburne*, where the mentally disabled are subjected to different treatment out of hostility, ignorance, or stereotype. Rather, the legislature has treated the mentally incompetent in a manner that not only provides them with favorable treatment in all or virtually all cases, but also avoids reliance on, or perpetuation of, any erroneous stereotypes damaging to the class. Because we conclude that any adverse treatment imposed on the mentally disabled by W.Va.Code, 55–2–15, is only hypothetical, we believe the appropriate standard of review is *Whitlow*'s rational relationship analysis. We find no difficulty in concluding that the statute satisfies that standard.

The plaintiffs contend the statute denies the mentally disabled an equal opportunity to invoke the "discovery rule" to toll the personal injury statute of limitations. In reality, the "discovery rule" has no application to those who have a permanent mental disability. By definition, a mentally incompetent cannot "discover" tortious conduct. The legislature has recognized that and has, through W.Va.Code, 55–2–15, tolled the statute of limitations while a person is under a mental disability, up to twenty years. As a practical matter, one who is permanently incompetent will always be dependent on parents or guardians to initiate litigation on his or her behalf. The twenty year tolling maxi-

"[I]n no event may an action for medical malpractice be brought by or on behalf of:

"(1) A person who is legally incompetent because of mental retardation or mental illness more than five years after the date on which the negligent or wrongful act or omission occurred[.]"

The court in *Kumar* did not address the appellee's argument that the amendment violated the Equal Protection and Due Process Clauses of the Georgia Constitution and the United States Constitution because "appellee's argument [was] directed to hypothetical situations in which an incompetent person might fail to meet the deadline of the statute of limitations because no person took an interest in his case, or because the person or persons who did act on his behalf lacked the ability to bring suit before the deadline.... [N]one of those situations pertain[ed] to [this case]." 423 S.E.2d at 657.

mum is a legislative judgment that enough is enough. At some point the interest of defendants in protecting individuals from having to defend against stale law suits—when memory, documents, facts, and witnesses have drifted away—takes over.[6] Certainly, twenty years is an ample time to allow those charged with responsibility for an incompetent person to recognize the need to act and to initiate legal proceedings to redress the incompetent's injuries. That the legislature has not imposed a similar twenty year limitation on competent persons does not matter; competent persons ordinarily must comply with a much shorter limitation period. The frequency of cases in which a reasonably diligent competent person fails to discover for more than twenty years that an injury he or she suffered was caused by tortious conduct is so rare that no legislative action is needed to impose an outer limit on the "discovery rule"'s application.[7]

 Thus, what plaintiffs claim to be discrimination is, when viewed in light of the entire legislative scheme and in light of reality, virtually no discrimination at all. Incompetents have twenty years from the date of injury to pursue a tort claim, regardless of when the tortious conduct was discovered by those responsible for handling their affairs. In that regard, incompetent persons receive favorable treatment, as competent persons have but two years from the date of discovery to file their claims. After twenty years, incompetent persons are barred from bringing suit, even if discovery of the tortious conduct occurs after that time has elapsed. Although competent persons may bring a claim after twenty years, assuming the suit is filed within two years of discovery, the class of individuals who would qualify for that status is virtually empty. Given the emptiness of the comparison class of competent persons, there is therefore no real discriminatory treatment. We see no reason to require the legislature to choose between eliminating the cap on the ability of incompetents to bring suit (and thus subject individuals to defending against incredibly stale law suits) and imposing a similar cap on the ability of competent persons to invoke the "discovery rule" (and thus waste legislative time on cases that rarely, if ever, occur).

Accordingly, we find that the twenty year cap in W.Va.Code, 55–2–15 (1923), is reasonably related to the legislative goal of preventing stale law suits and the failure to impose a similar cap on competent persons does not adversely discriminate against the mentally disabled. The legislature is not required to legislate against problems that do not exist.

For all the reasons stated herein, we conclude that the order of the Circuit Court of Ohio County granting summary judgment in favor of the defendants should be affirmed.

Affirmed.

BROTHERTON, C.J., did not participate.

---

**6.** Historically, statutes of limitations have been upheld despite allegations that they violate equal protection and due process. In *Vance v. Vance,* 108 U.S. 514, 520–521, 2 S.Ct. 854, 858, 27 L.Ed. 808, 811 (1883), the Supreme Court stated:

"The case of *Terry v. Anderson,* 95 U.S. 628[, 5 Otto 628, 24 L.Ed. 365 (1877)], presents, in the terse language of the Chief Justice of this court, both the rule, the reason for it, and the limitation which the constitutional provision implies. This court, he says, 'has often decided that statutes of limitation affecting existing rights are not unconstitutional, if a reasonable time is given for the enforcement of the action before the bar takes effect.'"

**7.** One instance in which the legislature has put an outer limit on competent persons is in the construction repose statute, W.Va.Code 55–2–6a (1983), which we upheld in *Gibson v. West Virginia Department of Highways,* 185 W.Va. 214, 406 S.E.2d 440 (1991). The repose statute differs from a limitation on the "discovery rule" because it precludes actions where the injury, as well as the discovery of negligence, occurs after the expiration of the repose period.