478 S.E.2d 104

Tomeka L. Robinson HARRISON, Administratrix of the Estate of Meagan Lea Robinson, and Tomeka L. Robinson Harrison, in her own right, Plaintiff Below, Appellant,

v.

Cee Ann DAVIS, M.D.; Judith K. Volkar, M.D.; Matthew T. Montgomery, M.D.; Raleigh General Hospital, a West Virginia Corporation; Health Data Copiers, Inc., a Virginia corporation; and Smart Professional Photocopy Corporation, a California corporation, DBA Smart Corporation, Defendants Below, Appellees.

No. 23287.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1996.

Filed Oct. 11, 1996.

Laurie Garrigan McKowen, Kathleen T. Pettigrew, Masters & Taylor, Charleston, for Appellant.

David L. Shuman, Elizabeth S. Lawton, Shuman, Annand & Poe, Charleston, for Appellees Cee Ann Davis, M.D., and Judith K. Volkar, M.D.

Charlotte A. Hoffman, Michael J. Farrell, Farrell & Farrell, L.C., Huntington, for Appellee Raleigh General Hospital.

Thomas J. Hurney, Jr., George A. Halkias, Jackson & Kelly, Charleston, for Appellee Smart Corporation.

J. Victor Flanagan, Cleek, Pullin, Knopf, Fowler & Flanagan, Charleston, for Appellee Matthew T. Montgomery, M.D.

Robert F. Pannell, Robert F. Pannell, P.C., Richmond, VA, for Appellee Health Data Copiers, Inc.

CLECKLEY, Justice.

The plaintiff below and appellant herein, Tomeka L. Robinson Harrison, as Administratrix of the Estate of Meagan Lea Robinson and in her own right, appeals a final order entered July 14, 1995, by the Circuit Court of Raleigh County, which dismissed her claims for personal injury, wrongful death, and spoliation of evidence with regard to the death of her infant daughter. On appeal before this Court, the plaintiff asserts the circuit court erred by: (1) holding that misrepresentation and concealment of material facts made by persons other than the named defendants did not toll the applicable statutes of limitations for her personal injury and wrongful death claims; (2) dismissing the amended complaint without permitting the parties to conduct discovery; and (3) finding the applicable two-year statutes of limitations barred her claim for spoliation of evidence. Upon a review of the record, we

find no reversible error and affirm the decision of the circuit court.

I.

## FACTUAL AND PROCEDURAL HISTORY

At approximately 5:00 a.m. on February 23, 1989, Tomeka L. Robinson Harrison entered the emergency room of Raleigh General Hospital in Beckley, West Virginia, and was admitted for labor and delivery of her unborn child. Two of the defendants below and appellees herein, Cee Ann Davis, M.D., and Judith K. Volkar, M.D., provided prenatal care and positioned a fetal monitor which documented Ms. Harrison's contractions and the unborn child's heart rate during labor. Shortly thereafter, Matthew T. Montgomery, M.D., delivered Ms. Harrison's child: a seven pound, ten ounce baby girl, Meagan Lea Robinson. It appears that Meagan's pediatrician [1] first informed Ms. Harrison of the infant's respiratory problems during the afternoon of February 23, 1989. The pediatrician allegedly explained that Meagan's breathing difficulties were due to premature or underdeveloped lungs and that he had ruled out the possibility of meconium aspiration.[2] On the morning of February 24, 1989, Meagan was transferred to Ruby Memorial Hospital in Morgantown, West Virginia, for further treatment of her continuing respiratory problems. Meagan died in the Morgantown hospital at 5:43 p.m. on February 24, 1989. The attending pediatrician[3] ostensibly told Ms. Harrison that Meagan died because her lungs were underdeveloped. At the time of Meagan's death, Ms. Harrison granted permission for an autopsy to be performed.

Several years later, in 1993, Ms. Harrison became pregnant with another child. As a result of Ms. Harrison's history of an infant death, her obstetrician requested Meagan's medical records and autopsy report. When her obstetrician received the autopsy report in March of 1993, Ms. Harrison learned that Meagan died as a result of meconium aspiration,[4] and not as a result of premature or underdeveloped lungs.[5] Ms. Harrison subsequently requested copies of her medical records and Meagan's medical records from another of the defendants below and appellees herein, Raleigh General Hospital, on October 8, 1993. She also asked the hospital, on January 5, 1994, to send her copies of fetal monitor strips from her labor and delivery of Meagan.

On December 19, 1994, Ms. Harrison filed a cause of action in the Circuit Court of Raleigh County against Dr. Davis, Dr. Volkar, Dr. Montgomery, Raleigh General Hospital, Health Data Copiers, Inc., and Smart Professional Photocopy Corporation, doing business as Smart Corporation. Ms. Harrison's claims included: (1) a personal injury action in her own right; (2) a personal injury/survival action on behalf of her deceased infant daughter, Meagan; (3) a wrongful death action[6]; and (4) an action for spoliation of evidence.[7] All the defendants filed motions to dismiss the action pursuant to

---

**1.** Meagan's pediatrician at Raleigh General Hospital, Carlos Lucero, M.D., was not named as a defendant in this case.

**2.** "Meconium" is defined as "a material that collects in the intestines of a fetus and forms the first stools of a newborn.... The presence of meconium in the amniotic fluid during labor may indicate fetal distress." *Mosby's Medical and Nursing Dictionary* 691–92 (2nd ed.1986). *Mosby's* further defines "meconium aspiration" as "the inhalation of meconium by the fetus or newborn, which can block the air passages and result in failure of the lungs to expand or cause other pulmonary dysfunction, as pneumonia or emphysema." *Id.* at 692.

**3.** David Z. Myerberg, M.D., Meagan's pediatrician at Ruby Memorial Hospital, was not named as a defendant in this case.

**4.** The definition of meconium aspiration is set forth in note 2, *supra*.

**5.** The record indicates Ms. Harrison did not learn of the autopsy diagnosis until her obstetrician received the report.

**6.** Ms. Harrison filed the survival and wrongful death actions in her role as Administratrix of the Estate of Meagan Lea Robinson, deceased.

**7.** The spoliation of evidence claim charged the defendants Raleigh General Hospital, Health Data Copiers, and Smart Corporation lost or misplaced the fetal monitor strips used during Ms. Harrison's labor and delivery of Meagan.

Rule 12(b)(6) of the West Virginia Rules of Civil Procedure charging that Ms. Harrison's claims were barred because the applicable statutes of limitations for personal injury [8] and wrongful death actions [9] had expired and because the discovery rule did not operate to toll the statutory two-year period.[10] In response to the defendants' motions, Ms. Harrison moved to amend her complaint alleging she did not discover the negligence of the defendants until March, 1993, because the defendants misrepresented and concealed material facts regarding Meagan's cause of death.[11]

The circuit court conducted a hearing in this matter on April 3, 1995. Counsel for Ms. Harrison intimated that Ms. Harrison did not discover earlier the defendants' medical negligence and alleged misrepresentations because she did not have medical training and had no reason to second-guess the pediatricians' explanations regarding Meagan's cause of death. Upon the circuit court's request for clarification of the defendants' alleged misrepresentations, Ms. Harrison's counsel replied: "I don't know whether there was any role played by any of the defendants in this case in the opinion that was conveyed to my client by her daughter's physicians; discovery may show that there was, but I am not in a position at this time to represent to the Court that these defendants here represented—made misrepresentations to my client." Additionally, counsel for Ms. Harrison repeatedly suggested that discovery may enable her to ascertain what role, if any, the defendants played in misrepresenting Meagan's cause of death and in misplacing the fetal monitor strips from her delivery. Counsel for the defendants maintained that the statutes of limitations for personal injury and wrongful death actions barred Ms. Harrison's claims. At the conclusion of the hearing, the circuit court granted Ms. Harrison's motion to amend her complaint and granted the defendants' motions to dismiss with prejudice.[12]

By order dated July 14, 1995, the circuit court dismissed Ms. Harrison's causes of action against the defendants finding that Ms. Harrison had not filed her complaint within two years from the date of Meagan's death,

8. Personal injury actions are governed by the general tort statute of limitations found in W.Va. Code, 55–2–12(b) (1959), and by W.Va.Code, 55–7B–4 (1986), which applies specifically to personal injuries resulting from a health care provider's medical negligence. Both these statutes require a plaintiff to file his or her personal injury claim within two years of the date of the injury. The defendants argue that Ms. Harrison's civil action should have been filed within two years of the alleged personal injuries to herself, which occurred on February 23, 1989, and within two years of the alleged personal injuries to Meagan, which occurred on February 23 and 24, 1989. Thus, the defendants contend such claims are barred by the two-year statute of limitations because Ms. Harrison did not file her personal injury claims on or before February 23, 1991, and February 24, 1991.

9. W.Va.Code, 55–7–6(d) (1985), requires a plaintiff to file a wrongful death action within two years after the decedent's death. Thus, the defendants contend that Ms. Harrison should have filed her wrongful death claim within two years of Meagan's death, which occurred on February 24, 1989. Accordingly, the defendants assert Ms. Harrison's wrongful death claim is barred by the two-year statute of limitations because she did not file her wrongful death action on or before February 24, 1991.

10. The defendants also argued that the spoliation of evidence claim was untimely because Ms. Harrison did not request the allegedly missing evidence within the statute of limitations for either the personal injury claims or the wrongful death action.

11. Ms. Harrison amended paragraph ten of her complaint to read as follows: "Plaintiff discovered the negligence of the defendants in approximately March, 1993, due to concealment of material facts and misrepresentations made to her as to the cause of her daughter's death." Similarly, she amended paragraph eighteen to allege: "Plaintiff discovered the negligent [*sic*] of the defendant, Raleigh General Hospital, in approximately, March, 1993, due to concealment of material facts and misrepresentations made to her as to the cause of her daughter's death."

12. It appears from the record that neither Ms. Harrison nor the majority of the defendants had conducted discovery when the circuit court dismissed the civil action. By contrast, it appears that counsel for the defendant, Dr. Montgomery, served Ms. Harrison with interrogatories and a request for production of documents in January, 1995.

as required by W. Va.Code, 55–7–6 (1985),[13] or within two years of either her personal injury or Meagan's personal injury, as required by W. Va.Code, 55–7B–4 (1986),[14] and W. Va.Code, 55–2–12 (1959).[15] The circuit court also noted Ms. Harrison's admission that none of the defendants had misrepresented information, concealed material facts, or otherwise interfered with her discovery of her claims within the applicable two-year statutory period. Furthermore, the circuit court determined the discovery rule did not apply to this case because Ms. Harrison had not satisfied the requirements of *Donley v. Bracken*, 192 W.Va. 383, 452 S.E.2d 699 (1994), which provides that the discovery rule tolls the statute of limitations in a medical negligence action " 'when there is a strong showing by the plaintiff that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury.' " Syl. Pt. 2, in part, *Donley, supra* (quoting Syl. Pt. 3, in part, *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992)). In this regard, the alleged misrepresentations regarding the cause of Meagan's death were made to Ms. Harrison by persons who were not named as defendants to this action rather than by any of the named defendants. Finally, the circuit court dismissed Ms. Harrison's spoliation of evidence claim because she did not request the allegedly missing fetal monitor strips within the applicable two-year statute of limitations.

## II.

## DISCUSSION

On appeal to this Court, Ms. Harrison presents three main grounds for reversal. First, she contends the circuit court improperly granted a motion to dismiss holding that misrepresentations and concealment of mate-

rial facts by persons other than the named defendants did not toll the applicable statutes of limitations for her personal injury and wrongful death claims. Next, she argues the circuit court erred by dismissing the amended complaint without permitting the parties sufficient time to conduct discovery. Finally, the plaintiff argues the trial court was wrong in finding the applicable two-year statutes of limitations barred her claim for spoliation of evidence. Following a brief discussion of the appropriate standard of review, we will discuss the merit of each of Ms. Harrison's assignments of error.

### A.

### *Standard of Review*

 This Court reviews *de novo* a circuit court's order granting a motion to dismiss a complaint, *see* Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995); *Murphy v. Smallridge*, 196 W.Va. 35, 36, 468 S.E.2d 167, 168 (1996), accepting all the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. Dismissal is proper pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl. Pt. 3, in part, *Chapman v. Kane Transfer Co., Inc.*, 160 W.Va. 530, 236 S.E.2d 207 (1977) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957)). *See also Sattler v. Bailey*, 184 W.Va. 212, 222, 400 S.E.2d 220, 230 (1990) (holding dismissal of complaint to be improper where allegations in complaint were adequate to state cause of action or basis for tolling applicable statute of limitations).

13. W.Va.Code, 55–7–6(d), provides, in part: "Every such action [for wrongful death] shall be commenced within two years after the death of such deceased person[.]"

14. W.Va.Code, 55–7B–4, requires, in part:
 "(a) A cause of action for injury to a person alleging medical professional liability against a health care provider arises as of the date of injury ... and must be commenced within two years of the date of such injury, or within two

years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such injury, whichever last occurs[.]"

15. W.Va.Code, 55–2–12, states, in part: "Every personal action for which no limitation is otherwise prescribed shall be brought: ... (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]"

At oral argument, the plaintiff seized upon the theory that the trial court erred by going beyond the "four corners" of the complaint and refused to accept her well-pleaded allegations on a Rule 12(b)(6) motion to dismiss.[16] However, in her appellate briefs, the plaintiff raises this argument only perfunctorily and cites no authority in support of her position. In any event, we find little merit in the plaintiff's position in the context of this case. We do not mean, however, to diminish our prior expression concerning the inappropriateness of applying Rule 12(b)(6) when the defense raises a statute of limitations defense. In note 14 of *Sattler v. Bailey*, 184 W.Va. at 222, 400 S.E.2d at 230, we succinctly stated:

> "This Court agrees with these comments in *Richards v. Mileski*, 662 F.2d 65[, 73] (D.C.Cir.1981):
>
>> 'There is an inherent problem in using a motion to dismiss for purposes of raising a statute of limitations defense. Although it is true that a complaint sometimes discloses such defects on its face, it is more likely that the plaintiff can raise factual setoffs to such an affirmative defense. The filing of an answer, raising the statute of limitations, allows both parties to make a record adequate to measure the applicability of such a defense, to the benefit of both the trial court and any reviewing tribunal. We do not hold that the use of a motion to dismiss is always improper to raise a statute of limitations defense, but we do suggest that a responding party often imposes an undue burden on the trial court and impedes the orderly administration of the lawsuit when he relies on a motion to dismiss to raise such an affirmative defense.' "

As will be discussed below, the extrinsic information relied upon by the circuit court was the statements of the plaintiff's counsel explaining the complaint. These statements constituted admissions against the plaintiff, and we believe it would have been inconsistent with notions of judicial integrity for the trial court to have ignored them in ruling on the motion. The West Virginia Rules of Civil Procedure should be construed liberally to promote justice. Consistent with this liberal approach, a circuit court may look beyond the technical nomenclature of the complaint when ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure to reach the substance of the parties' positions. *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. at 776 n. 7, 461 S.E.2d at 522 n. 7 (information brought out during argument of the motion to dismiss is "relevant to the extent that [such information] 'could be proved consistent with the allegations.' *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59, 65 (1984)").

Regardless of the circuit court's consideration of extrinsic information, the plaintiff was well aware that the issue before the circuit court was a motion to dismiss with prejudice based on the statutes of limitations. The defendants clearly argued in their motions that the plaintiff's claims were expressly preempted by the various statutes of limitations. The plaintiff responded to the merits of these arguments before the circuit court. In fact, the plaintiff's response indirectly acknowledged that her claim could be barred unless she was entitled to rely upon some form of equitable tolling but that she had no direct information that would prove misrepresentation or concealment on the part of the defendants. Yet, even if the circuit court inappropriately relied on matters outside the pleadings, we will affirm the dismissal if the Rule 12(b)(6) standards are met without reference to the extrinsic materials.[17] In this situation, we find the circuit

---

**16.** Indeed, if a circuit court considers matters outside the pleadings in connection with a motion to dismiss, we must treat the motion as one for summary judgment. Failure to treat such a motion as one for summary judgment and to provide the litigants with notice and an opportunity to respond can constitute reversible error.

**17.** In *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. at 776, 461 S.E.2d at 522, we stated:

"Under Rule 8 [of the West Virginia Rules of Civil Procedure], a complaint must be intelligibly sufficient for a circuit court or an opposing party to understand whether a valid claim is alleged and, if so, what it is.

court was not procedurally precluded from dismissing the plaintiff's complaint under a Rule 12(b)(6) motion to dismiss. Thus, we must determine if the plaintiff can prove any set of facts that would entitle her to relief.

### B.

### Personal Injury Claims

The plaintiff first argues the circuit court erred by holding that she had not filed her complaint within the statutes of limitations for personal injury claims provided by W. Va.Code, 55–7B–4 (1986), and W. Va.Code, 55–2–12 (1959). In response to the circuit court's ruling, she asserts the discovery rule tolled the two-year limitations period for her personal injury claims. Ms. Harrison also states the defendant doctors may have misrepresented and concealed information and material facts regarding her labor and Meagan's delivery from Meagan's pediatricians at Raleigh General Hospital and Ruby Memorial Hospital.[18] These pediatricians, who were not named as defendants in this action, then allegedly misinformed Ms. Harrison about personal injuries she and her daughter had sustained during labor and delivery. As a result of the defendant doctors' initial misrepresentations, Ms. Harrison claims she did not discover her personal injuries or those of her deceased daughter until she learned of Meagan's autopsy results in March of 1993.

The West Virginia Legislature has established a limitation on a cause of action for personal injury claims. A plaintiff may allege personal injury in a general tort action, subject to the general tort statute of limitations found in W. Va.Code, 55–2–12 (1959): "Every personal action for which no limitation is otherwise prescribed shall be brought: ... (b) within two years next after the right to bring the same shall have accrued if it be

for damages for personal injuries[.]" Alternatively, a plaintiff may bring an action for personal injuries resulting from a health care provider's medical negligence. Such medical negligence claims are governed by W. Va. Code, 55–7B–4 (1986):

"(a) A cause of action for injury to a person alleging medical professional liability against a health care provider arises as of the date of injury, except as provided in subsection (b) of this section, and must be commenced within two years of the date of such injury, or within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such injury, whichever last occurs: Provided, That in no event shall any such action be commenced more than ten years after the date of injury.

"(b) A cause of action for injury to a minor, brought by or on behalf of a minor who was under the age of ten years at the time of such injury, shall be commenced within two years of the date of such injury, or prior to the minor's twelfth birthday, whichever provides the longer period.

"(c) The periods of limitation set forth in this section shall be tolled for any period during which the health care provider or its representative has committed fraud or collusion by concealing or misrepresenting material facts about the injury."

In certain circumstances, the two-year limitations period for filing a personal injury claim may be extended. As set forth above, W. Va.Code, 55–7B–4(c), tolls the statute of limitations if the negligent health care provider commits "fraud or collusion by concealing or misrepresenting material facts about the injury." Additionally, we have held in Syllabus Point 2 of *Hundley v. Martinez*, 151 W.Va. 977, 158 S.E.2d 159 (1967):

"Although entitlement to relief must be shown, a plaintiff is not required to set out facts upon which the claim is based. Nevertheless, despite the allowance in Rule 8(a) that the plaintiff's statement of the claim be 'short and plain,' a plaintiff may not 'fumble around searching for a meritorious claim within the elastic boundaries of a barebones complaint[,]' see *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1430 (7th Cir.1993), or where the claim is not authorized by the laws of West Virginia. A motion to dismiss under Rule 12(b)(6) en-

ables a circuit court to weed out unfounded suits."

18. Ms. Harrison's counsel stated, during the circuit court hearing, that "misrepresentations were made to [Ms. Harrison] by her daughter's physicians, who are not defendants in this lawsuit.... So there were misrepresentations made, but whether these defendants played a role in that, I don't know."

"In a medical malpractice case the statute of limitations begins to run at the time the injury is inflicted, or, in the event the physician fraudulently conceals from the plaintiff the facts showing negligence, when the fraud is penetrated and the injury is discovered or when by the exercise of reasonable diligence it should have been discovered."

Finally, the "discovery rule" may toll the statute of limitations for personal injury claims if a plaintiff satisfies certain requirements as set forth in Syllabus Point 2 of *Donley v. Bracken*, 192 W.Va. 383, 452 S.E.2d 699 (1994):

"'Mere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of the statute of limitations; the "discovery rule" applies only when there is a strong showing by the plaintiff that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury.' Syllabus Point 3, *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992)."

Reviewing the record in this case, the circuit court determined the plaintiff had not satisfied the *Donley* requirement that the defendants prevented her from discovering her personal injury claims. We agree with the circuit court's ruling. Both W. Va.Code, 55–7B–4(c), and *Donley* require affirmative action by a defendant that interferes with a plaintiff's ability to earlier discover his or her personal injury. The plaintiff in the instant case has failed to demonstrate that these named defendants misrepresented material facts or otherwise acted to prevent her from discovering the nature of her or her daughter's injuries.[19] During the hearing in this matter, counsel for the plaintiff indicated:

"[M]isrepresentations were made to [the plaintiff] by her daughter's physicians who are not defendants in this lawsuit. The physician defendants here were the physicians who gave prenatal care to [the plaintiff] and who delivered her baby. The ones who made representations to her as to the cause of the baby's death were the pediatricians who were attending the baby that died. So there were misrepresentations made, but whether these defendants played a role in that, I don't know.

"So I am not in a position to allege in my complaint that there was any fraud on the part of these defendant doctors because I don't know that to be the case[.]"

While counsel states that misrepresentations were made to Ms. Harrison regarding Meagan's cause of death, she does not contend the defendants actually prevented Ms. Harrison from discovering the true cause of death within the limitations period. Rather, counsel advances equivocal accusations that the defendants may or may not have participated in these misrepresentations. We find such inconclusive assertions, which indicate third parties who were not named as defendants to this action, misrepresented material facts do not satisfy the requirement "'that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury.'" Syl. Pt. 2, in part, *Donley v. Bracken, supra,* (quoting Syl. Pt. 3, in part, *Cart v. Marcum, supra*.)[20]

We also find the plaintiff failed to satisfy the criteria of *Hundley* which tolls the statute of limitations in medical malpractice cases if a plaintiff exercises reasonable diligence in discovering his or her personal injuries. Syl. Pt. 2, *Hundley v. Martinez, supra.* Although the amended complaint fails to allege the specific nature of Ms. Harrison's and Meagan's personal injuries,[21] the record indi-

---

**19.** In addition to the alleged misrepresentations regarding Meagan's cause of death, the plaintiff charges the defendants mishandled the fetal monitor strips. We will address this contention in Section II(E), *infra.*

**20.** Generally, the actions of third parties in misrepresenting or concealing material facts do not toll statutes of limitations. Rather, where a statute of limitations may be tolled because fraud, misrepresentation, or concealment of material facts prevented the plaintiff from earlier discov-

ering his or her cause of action, such wrongdoing must have been committed by the named defendant(s). *See* Comment Note, Annot., *What Constitutes Concealment Which Will Prevent Running of Statute of Limitations,* 173 A.L.R. 576 §§ 10, 12 (1948).

**21.** The amended complaint does set forth the manner in which the defendant physicians allegedly were negligent in the care and treatment of Ms. Harrison and Meagan. However, the amended complaint fails to state the precise na-

cates the defendant physicians last treated Ms. Harrison on February 23, 1989, and they last treated Meagan on February 24, 1989. From the vague assertions found in the record and the briefs submitted to this Court, it appears that Ms. Harrison's personal injuries were the direct result of her labor and delivery of Meagan. Because she does not allege any specific permanent or long-lasting injuries, it appears Ms. Harrison should have reasonably discovered her own personal injuries at the time of Meagan's birth or shortly thereafter. Similarly, Meagan's personal injuries were not latent, undetectable injuries. Rather, Meagan's injuries resulted in her death and were evident on February 24, 1989.[22] Therefore, the exercise of reasonable diligence should have alerted Ms. Harrison to the existence of the personal injury claims on or about February 23 and 24, 1989. Accordingly, the circuit court properly found the discovery rule did not toll the personal injury limitations period in this case.

## C.

### Wrongful Death Claim

For her second assignment of error, the plaintiff asserts the circuit court erred by holding that she did not file her wrongful death claim within the period provided by W. Va.Code, 55–7–6 (1985). She maintains that the exception noted in *Miller v. Romero*, 186 W.Va. 523, 413 S.E.2d 178 (1991), operates to toll the statutory two-year period for filing her wrongful death action. Ms. Harrison reiterates that the defendant doctors' possible misrepresentation of the circumstances surrounding her labor and Meagan's delivery caused the pediatricians to misrepresent Meagan's ultimate cause of death. As noted previously, this fraudulent concealment of material facts allegedly prevented Ms. Harrison from learning of Meagan's true cause of death until March, 1993.

As with causes of action for personal injuries, the West Virginia Legislature

has also established a statutory limitation on a cause of action for the wrongful death of a person. Pursuant to W. Va.Code, 55–7–5 (1931):

"Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured[.]" (Parentheses in original).

W. Va.Code, 55–7–6(d) (1985), further provides, in part: "Every such action [for wrongful death] shall be commenced within two years after the death of such deceased person[.]" Unlike personal injury claims, the discovery rule does not operate to toll the two-year filing period for wrongful death claims.[23] However, we have determined that an extension of the two-year statutory filing period is appropriate in certain circumstances: "The two-year period which limits the time in which a decedent's representative can file suit is extended only when evidence of fraud, misrepresentation, or concealment of material facts surrounding the death is presented." Syl. Pt. 2, *Miller v. Romero*, 186 W.Va. 523, 413 S.E.2d 178 (1991). In rendering this narrow exception, we cautioned:

"It is not sufficient for a plaintiff to complain that he didn't understand what he was told, or that he did not know enough to do research. If situations such as those were allowed to extend the two-year filing period, then virtually every layperson could claim fraud, misrepresentation, or concealment." *Miller*, 186 W.Va. at 528, 413 S.E.2d at 183.

In the present case, the circuit court rejected the plaintiff's arguments that *Miller* extended the two-year filing period for her

ture of the personal injuries resulting from the alleged negligence.

**22.** We will address Ms. Harrison's wrongful death claim in Section II(C), *infra*.

**23.** For a discussion of the distinction between personal injury claims, to which the discovery rule is applicable, and wrongful death actions, to which the discovery rule does not apply, see *Miller v. Romero*, 186 W.Va. at 525–27, 413 S.E.2d at 180–82.

wrongful death action. We find the circuit court's order dismissing Ms. Harrison's wrongful death claim was proper. *Miller* requires a plaintiff to show that "fraud, misrepresentation, or concealment of material facts" prevented him or her from knowing the circumstances accompanying his or her decedent's death. While the *Miller* holding does not specifically designate the defendant as the party responsible for the misrepresentation, the analysis preceding this limited exception suggests the defendant is the responsible party: "[W]e are troubled by the potential inequity in cases where a physician actively conceals malpractice from the decedent's representatives. Such fraud effectively abrogates the purpose of the statutory two-year limitation period in the wrongful death action and creates an intolerable situation." *Miller*, 186 W.Va. at 527, 413 S.E.2d at 182.[24]

As we noted above with respect to the plaintiff's personal injury claims, an extension of the statutory filing period for wrongful death claims requires an affirmative act of fraud, misrepresentation, or concealment of material facts by the named defendants. Bare assertions that third parties misrepresented the decedent's cause of death, coupled with conclusory allegations that the named defendants may or may not have indirectly contributed to those misrepresentations, do not rise to the level of affirmative actions by the named defendants as contemplated by *Miller*. Counsel's vague assertions that the defendants may have communicated with the pediatricians who misrepresented Meagan's cause of death do not satisfy the requirement that the named defendants actively misrepre-

sented, concealed, or otherwise fraudulently misstated the circumstances of the decedent's death.[25]

Neither do we find merit in the plaintiff's contentions that because "she didn't have any reason to question her doctors at the time [the alleged misrepresentations] were made to her," the wrongful death statutory period should be extended. We noted above that *Miller* specifically contemplated the situation in which a nonmedically trained plaintiff complained that he or she did not "understand what he was told, or that he did not know enough to do research" and refused an extension of the statutory period in these circumstances in an attempt to maintain the exception's limited applicability. *Miller*, 186 W.Va. at 528, 413 S.E.2d at 183. Consequently, the plaintiff has failed to establish conduct by the named defendants sufficient to extend the statutory period for filing her wrongful death action.[26]

### D.

### *Discovery*

The plaintiff also assigns as error the circuit court's failure to permit her to conduct discovery. She asserts that discovery was necessary in this case in order to establish her claims that the defendants misrepresented information and fraudulently concealed material facts regarding the personal injuries of Meagan and herself and Meagan's wrongful death. As her previous assignments of error, which allege that the defendants' misrepresentations tolled the applicable statutes of limitations for her personal injury and wrongful death claims, depend upon the de-

---

**24.** In *Miller*, the defendant physician allegedly told the decedent's representative "that it was God's will that [the decedent] die, did not explain the problems with the [decedent's] diabetic medication, and paid part of the funeral bills in an attempt to ingratiate himself with [the decedent's] family." 186 W.Va. at 524, 413 S.E.2d at 179.

**25.** Counsel for the defendants argue the plaintiff did not satisfy the *Miller* requirements because her amended complaint did not specifically allege fraud as required by Rule 9(b) of the West Virginia Rules of Civil Procedure. We decline to address this argument because the *Miller* exception is worded in the disjunctive, thereby provid-

ing three possible actions by a defendant that operate to extend the wrongful death filing period. *State v. Rummer*, 189 W.Va. 369, 377, 432 S.E.2d 39, 47 (1993) (" '[w]e have customarily stated "that where the disjunctive 'or' is used, it ordinarily connotes an alternative between the two clauses it connects" ' "). (Citations omitted). Consequently, the plaintiff is not required to either allege or prove that the defendants committed fraud to benefit from the *Miller* exception.

**26.** *Miller* also provides for limited discovery on the issue of whether a defendant committed fraud with regard to a decedent's death. 186 W.Va. at 528, 413 S.E.2d at 183. We will address this issue in Section II(D), *infra*.

fendants' allegedly wrongful conduct, the plaintiff contends the circuit court should have permitted her to conduct discovery to determine whether the defendants, in fact, misrepresented information regarding her labor and Meagan's delivery to Meagan's pediatricians in the Beckley and Morgantown hospitals or inappropriately handled the fetal monitor strips.

Notwithstanding that the defendants' motions before the circuit court were motions to dismiss filed pursuant to Rule 12(b)(6) of the Rules of Civil Procedure, Ms. Harrison's request for discovery is more analogous to the situation in which an opponent of a summary judgment motion requests a continuance for the purpose of conducting additional discovery.[27] While counsel for Ms. Harrison never specifically requested the circuit court to permit her an extension of time during which to conduct discovery, counsel repeatedly asserted that discovery in this case would be helpful to prove various aspects of the plaintiff's claims and to defeat the defendants' motions to dismiss. In *Crain v. Lightner*, 178 W.Va. 765, 364 S.E.2d 778 (1987), we addressed a similar situation in which the plaintiff could not oppose the defendants' motion for summary judgment without further discovery. In Syllabus Point 3 of *Crain*, we stated:

"Where a party is unable to resist a motion for summary judgment because of an inadequate opportunity to conduct discovery, that party should file an affidavit pursuant to *W.Va.R.Civ.P.* 56(f) and obtain a ruling thereon by the trial court. Such affidavit and ruling thereon, or other evidence that the question of a premature summary judgment motion was presented to and decided by the trial court, must be included in the appellate record to preserve the error for review by this Court."

Recognizing that substantial compliance with Rule 56(f), rather than strict adherence to these proscriptions, may suffice in certain situations, we recently clarified the requirements of Rule 56(f) in Syllabus Point 1 of *Powderidge Unit Owners Association v. Highland Properties, Ltd.*, 196 W.Va. 692, 474 S.E.2d 872 (1996):

"An opponent of a summary judgment motion requesting a continuance for further discovery need not follow the exact letter of Rule 56(f) of the West Virginia Rules of Civil Procedure in order to obtain it. When a departure from the rule occurs, it should be made in written form and in a timely manner. The statement must be made, if not by affidavit, in some authoritative manner by the party under penalty of perjury or by written representations of counsel. At a minimum, the party making an informal Rule 56(f) motion must satisfy four requirements. It should (1) articulate some plausible basis for the party's belief that specified 'discoverable' material facts likely exist which have not yet become accessible to the party; (2) demonstrate some realistic prospect that the material facts can be obtained within a reasonable additional time period; (3) demonstrate that the material facts will, if obtained, suffice to engender an issue both genuine and material; and (4) demonstrate good cause for failure to have conducted the discovery earlier."

▪ In a case, such as the one presently before us, where a plaintiff opposes a Rule 12(b)(6) motion to dismiss and claims that discovery would enable him or her to oppose such a motion, the plaintiff may request a continuance for further discovery pursuant to

---

**27.** Rule 26 of the West Virginia Rules of Civil Procedure provides general guidelines for obtaining discoverable information. *See, e.g.,* W.Va. R.Civ.P. 26(g) (requiring party requesting discovery from another party to make such request in writing). By contrast, Rule 56(f) of the West Virginia Rules of Civil Procedure provides:

"*When affidavits are unavailable.*—Should it appear from the affidavits of a party opposing the motion [for summary judgment] that he cannot for reasons stated present by affidavit facts essential to justify his opposition, *the court* may refuse the application for judgment

or *may order a continuance to permit* affidavits to be obtained or depositions to be taken or *discovery to be had* or may make such other order as is just." (Emphasis added).

Therefore, Rule 56, governing summary judgment, permits a circuit court to recognize that further discovery may assist a party in opposing a summary judgment motion and authorizes the circuit court to grant a continuance for the taking of further discovery, whereas Rule 26, pertaining to discovery, does not sanction such a continuance.

Rule 56(f). In order to obtain such a discovery continuance, the plaintiff must, at a minimum, "(1) articulate some plausible basis for the [plaintiff's] belief that specified 'discoverable' material facts likely exist which have not yet become accessible to the [plaintiff]; (2) demonstrate some realistic prospect that the material facts can be obtained within a reasonable additional time period; (3) demonstrate that the material facts will, if obtained, suffice to engender an issue both genuine and material; and (4) demonstrate good cause for failure to have conducted the discovery earlier." Syl. Pt. 1, in part, *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd., supra.*

▇ Upon a review of the record in this case, we find the circuit court did not err in denying the plaintiff an opportunity to conduct discovery before it dismissed her claims. During the hearing below, counsel for plaintiff repeatedly indicated that discovery may enable her to prove that the defendant physicians misrepresented Meagan's cause of death or that the defendants Raleigh General Hospital, Health Data Copiers, and Smart Corporation improperly handled the fetal monitor strips. However, neither the hearing transcript nor the circuit court's original record indicates that counsel for the plaintiff requested the circuit court, either formally or informally, to permit the plaintiff to conduct discovery before it ruled upon the defendants' motions to dismiss. In this regard, counsel not only failed to request a discovery continuance, but also failed to satisfy the *Powderidge* requirements for granting such a request.

The first criterion requires the plaintiff to "articulate some plausible basis for the [plaintiff's] belief that specified 'discoverable' material facts likely exist which have not yet become accessible to the [plaintiff]." At the hearing in this matter, counsel stated she believed discovery could clarify the defendants' roles with regard to the alleged mis-

representations and the missing fetal monitor strips; however she failed to state the basis for her belief. In this regard, counsel asserted: "[N]one of these defendants directly made statements to my clients [*sic*]. Now whether they played some role in causing the pediatricians to make a statement to my client, I couldn't know without some discovery."

The second requirement directs the party to "demonstrate some realistic prospect that the material facts can be obtained within a reasonable additional time period." Counsel for the plaintiff has stated on numerous occasions that she is uncertain as to the defendants' precise roles with regard to the alleged wrongdoing and that discovery may or may not clarify their alleged actions. Therefore, counsel has failed to assert "some realistic prospect that the material facts can be obtained." Likewise, counsel never proposed a time period for such additional discovery.

Criterion three commands the plaintiff to "demonstrate that the material facts will, if obtained, suffice to engender an issue both genuine and material." As we have noted with regard to previous requirements, counsel for the plaintiff cannot assert that the "discoverable" facts exist. Consequently, it seems she equally would be unable to show that such inconclusive facts would produce a genuine and material issue. The last requirement directs that the plaintiff "demonstrate good cause for failure to have conducted the discovery earlier." Again, counsel does not indicate why she did not earlier conduct discovery, and the record contains no indication she attempted to obtain discoverable information in this case.[28] Therefore, we find the plaintiff neither requested a discovery continuance nor demonstrated good cause for her failure to earlier conduct discovery. Accordingly, the circuit court properly granted the defendants' motions to dismiss despite the fact that plaintiff had not yet conducted discovery.[29]

---

28. While the record does contain Ms. Harrison's requests for medical records, it does not contain any type of discovery directed toward ascertaining the defendants' roles in the alleged misrepresentations or alleged mishandling of the fetal monitor strips.

29. Ms. Harrison asserts the circuit court should have permitted her limited discovery regarding fraud anticipated by *Miller v. Romero, supra.* In *Miller,* we reviewed the two-year statutory period for filing wrongful death claims and stated that "cases filed beyond the statutory two-year time period need only undergo limited discovery on

### E.

### Spoliation of Evidence

Lastly, the plaintiff asserts the circuit court erred by dismissing her claim against the defendants Raleigh General Hospital, Health Data Copiers, and Smart Corporation for spoliation of evidence. In her amended complaint, the plaintiff alleged these defendants' actions in misplacing or losing the fetal monitor strips from her labor and Meagan's delivery constituted fraudulent concealment of material facts and spoliation of evidence. Dismissing this cause of action, the circuit court found that, because the plaintiff did not request the fetal monitor strips until January 5, 1994, the applicable two-year statutes of limitations barred her claim. The circuit court also determined that the dismissal of the underlying personal injury and wrongful death claims dictated the dismissal of the spoliation of evidence claim.

The claim for spoliation of evidence [30] is a novel issue in this State. Although we have decided two cases involving such a claim, we have yet to recognize spoliation of evidence as a valid cause of action.[31] *See State ex rel. State Farm Fire & Casualty Co. v. Madden,* 192 W.Va. 155, 451 S.E.2d 721 (1994) (noting that plaintiff alleged spoliation of evidence in his amended complaint); *Taylor v. Ford Motor Co.,* 185 W.Va. 518, 408 S.E.2d 270 (1991) (refusing to determine validity of cause of

action for spoliation of evidence). We again decline to resolve the viability of such a cause of action because we find the circuit court properly dismissed the plaintiff's spoliation of evidence claim as untimely filed.

 The plaintiff alleges she requested the fetal monitor strips from her labor and Meagan's delivery on January 5, 1994. Thus, it appears she did not request these records until after the two-year filing period for her personal injury and wrongful death claims had expired. Since the plaintiff did not request the fetal monitor strips until after the two-year filing period had expired, it appears the defendants' inability to locate such records did not impair the plaintiff's ability to bring the underlying personal injury and wrongful death claims. Thus, we find the spoliation of evidence claim is barred by the two-year limitations period.[32]

### III.

### CONCLUSION

For the foregoing reasons, we affirm the decision of the Circuit Court of Raleigh County.

Affirmed.

---

the issue of fraud before a summary judgment motion can be entertained." 186 W.Va. at 528, 413 S.E.2d at 183. Although this provision for limited discovery applies to the present case, we find the plaintiff has not established that even limited discovery would assist her in developing her assertions that the defendants fraudulently concealed and/or misrepresented material facts regarding Meagan's cause of death.

30. The elements of a cause of action for intentional spoliation of evidence include:
 "(1) existence of a potential civil action, (2) defendant's knowledge of a potential civil action, (3) destruction of that evidence, (4) intent, (5) a causal relationship between the evidence destruction and the inability to prove the lawsuit, and (6) damages." *Foster v. Lawrence Memorial Hosp.,* 809 F.Supp. 831, 836 (D.Kan. 1992). (Citations omitted).
 "Negligent spoliation of evidence is similar except that a legal or contractual duty to preserve evidence must exist before liability for the evidence's loss will be imposed." *Id.*

31. Some jurisdictions recognize a cause of action for spoliation of evidence, *see, e.g., Foster v. Lawrence Memorial Hosp.,* 809 F.Supp. 831 (D.Kan. 1992); *Hazen v. Municipality of Anchorage,* 718 P.2d 456 (Alaska 1986); *Continental Ins. Co. v. Herman,* 576 So.2d 313 (Fla.Dist.Ct.App.1990), *rev. denied,* 598 So.2d 76 (Fla.1991), while other jurisdictions refuse to acknowledge such a claim, *see, e.g., Murray v. Farmers Ins. Co.,* 118 Idaho 224, 796 P.2d 101 (1990); *Panich v. Iron Wood Prod. Corp.,* 179 Mich.App. 136, 445 N.W.2d 795 (1989); *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.,* 456 N.W.2d 434 (Minn. 1990).

32. Because we have not decided the viability of a spoliation of evidence claim in West Virginia, we similarly decline to determine whether the defendant Raleigh General Hospital had a duty to preserve Ms. Harrison's and Meagan's medical records or whether, if such a duty exists, the hospital breached this duty.