509 S.E.2d 864

**STATE of West Virginia ex rel. George CARPER, Petitioner,**

v.

**WEST VIRGINIA PAROLE BOARD, Respondent.**

No. 25184.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 6, 1998.

Decided Nov. 20, 1998.

Dissenting Opinion of Chief Justice Davis Dec. 14, 1998.

Davis, C.J., issued dissenting opinion.

George Carper, Pro se.

Darrell V. McGraw, Jr., Esq., Attorney General, Chad M. Cardinal, Esq., Assistant Attorney General, Charleston, for Respondent.

STARCHER, Justice:

In the instant case, we review the retroactive application of a 1997 statutory amendment authorizing increased periods of time between parole hearings for prisoners serving "life" terms of imprisonment with the possibility of parole. We conclude that this retroactive application does not facially violate the constitutional prohibition against *ex post facto* laws, if the amendment is narrowly applied on a case-by-case basis, with appropriate safeguards.

## I.

### *Facts and Background*

In 1997 the West Virginia Legislature enacted an amendment to our parole law, *W.Va.Code*, 62–12–13, that allows the respon-

dent West Virginia Board of Parole ("the Board") to decrease the frequency of parole hearings for prisoners who are serving sentences of life imprisonment with the possibility of parole.

As amended, *W.Va.Code*, 62–12–13(a)(5) [1997] (effective July 10, 1997) states in pertinent part:

In the case of a person sentenced to any state correctional center, it shall be the duty of the board, as soon as such person becomes eligible, to consider the advisability of his or her release on parole. If, upon such consideration, parole be denied, the board shall at least once a year reconsider and review the case of every inmate so eligible, which reconsideration and review shall be by at least three members of the board: *Provided, however, That the board may reconsider and review parole eligibility any time within three years following the denial of parole of a person serving a life sentence.*

(Emphasis added.)

The petitioner George Carper began serving a life with mercy sentence in 1978. On February 11, 1998, the petitioner was denied parole. The Board informed the petitioner that the Board would next review his parole eligibility in 2 years, or February of 2000. The petitioner filed a *pro se* pleading in this Court challenging the Board's action as violative of constitutional *ex post facto* provisions. We treated his pleading as a writ of mandamus and made it returnable by the respondent Board.

## II.

### Standard of Review

■ "When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to

by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment' Point 3, Syllabus, *Willis v. O'Brien*, 151 W.Va. 628 [153 S.E.2d 178] [ (1967) ]." Syllabus Point 1, *State ex rel. Haden v. Calco Awning & Window Corp.*, 153 W.Va. 524, 170 S.E.2d 362 (1969).

Syllabus Point 3, *Donley v. Bracken*, 192 W.Va. 383, 452 S.E.2d 699 (1994).

## III.

### Discussion

■ The petitioner challenges the constitutionality of the Board's application of the above-quoted language from *W.Va.Code*, 62–12–13(a)(5) [1997] to him, by denying him an annual parole review.[1] Treating the petitioner's *pro se* pleadings with liberality, we determine that the petitioner has stated a claim that the application of the 1997 amendment to the Board's review of his sentence violates *ex post facto* principles.[2]

■ This Court has recognized that parole hearings are a substantial interest subject to legal protection. *See Vance v. Holland*, 177 W.Va. 607, 355 S.E.2d 396 (1987) (*per curiam*). Accordingly, legal provisions affecting "parole eligibility [are] ... scrutinized under the Ex Post Facto Clause." *Adkins v. Bordenkircher*, 164 W.Va. 292, 296, 262 S.E.2d 885, 887 (1980).

In *Adkins*, we held that prisoners were entitled to have good time credits on their sentences calculated at the rate established by the statute in effect at the time of the commission of a prisoner's offense. We recognized the general rule established in the federal courts that "a superseding law or administrative rule cannot change the conditions of parole eligibility to the detriment of an imprisoned offender without running afoul

---

1. The petitioner also argues that the permissive word "may" in the statutory proviso at the end of the quoted section—"the board may reconsider and review parole eligibility any time within three years following the denial of parole of a person serving a life sentence"—does not authorize the Board to increase the length of time between parole reviews to up to 3 years for prisoners serving terms of life with the possibility of parole.

This argument is meritless. The language of the proviso is clear and constitutes an exception to the annual parole review required for prisoners generally.

2. *Ex post facto* laws are barred under Article III, Section 4 of the *West Virginia Constitution* and Article I, Section 10 of the *United States Constitution*.

of the Ex Post Facto Clause." 164 W.Va. at 296–297, 262 S.E.2d at 887 (citations omitted).

■ In Syllabus Point 1 of *Adkins,* this Court stated:

> Under *ex post facto* principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him.

In *State v. R.H.,* 166 W.Va. 280, 288–90, 273 S.E.2d 578, 583–84 (1980) this Court ` recognized the classic United States Supreme Court definition of an *ex post facto* law as set forth by the United States Supreme Court in *Calder v. Bull,* 3 U.S. 386, 390, (3 Dall.) 386, 1 L.Ed. 648, 650 (1798):

> (1) every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action; (2) every law that aggravates a crime, or makes it greater than it was when committed; (3) every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed; (4) every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the commission of the offense, in order to convict the offender.

■ We noted in *State v. R.H.* that the *ex post facto* prohibition extends to any alteration, even one labeled procedural, "which in relation to the offense or its consequences, alters the situation of a party to his disadvantage." 166 W.Va. at 289, 273 S.E.2d at 584. We further stated that these general observations provide a standard by which the courts are to be guided in their determination of which statutory changes may be applied retroactively to an accused. Just what alterations of procedure will be held to be of sufficient moment to transgress the constitutional prohibition cannot be embraced within a formula or stated in a general proposition. The distinction is one of degree. 166 W.Va. at 290, 273 S.E.2d at 584 [3]

With respect to legal changes that retroactively affect a prisoner's parole eligibility, we stated in *Adkins, supra,* that:

> In *Warden v. Marrero,* 417 U.S. 653, 662–63, 94 S.Ct. 2532, 2538, 41 L.Ed.2d 383, 392 (1974), the Supreme Court strongly implied that a law which altered the conditions of parole eligibility to the detriment of an inmate would contravene the *ex post facto* prohibition:
>
> > "[O]nly an unusual prisoner could be expected to think that he was not suffering a penalty when he was denied eligibility for parole. For the confined prisoner, parole—even with its legal

**3.** This Court has recognized the problems inherent in attempting to label such changes as "procedural" or "substantive" with respect to their retroactive application to criminal defendants. In *Pnakovich v. SWCC,* 163 W.Va. 583, 591, 259 S.E.2d 127, 131 (1979) we stated:

> In practice, very few changes [to criminal statutes] are perceived to be merely procedural because of the nature of the right which the criminal statute alters. If the procedural change is not perceived to deny the accused a defense available under the laws at the time of his offense, or operates only in a limited and unsubstantial manner to his disadvantage, then the provision may be applied retroactively. Thus it may be seen that limitations on retroactive criminal legislation are particularly severe, while those in the civil area turn upon the amount of substantial reliance.

We stated in Syllabus Point 7 of *State ex rel. Collins v. Bedell,* 194 W.Va. 390, 460 S.E.2d 636 (1995):

A procedural change in a criminal proceeding does not violate the ex post facto principle found in the *W.Va. Const.* art. III, § 4 and in the *U.S. Const.* art. I, § 10 unless the procedural change alters the definition of a crime so that what is currently punished as a crime was an innocent act when committed; deprives the accused of a defense which existed when the crime was committed; or increases the punishment for the crime after it was committed. In *State v. Hensler,* 187 W.Va. 81, 83, 415 S.E.2d 885, 887 (1992) *(per curiam ),* we stated further:

> [T]he United States Supreme Court and this Court have recognized that the principle on which the prohibition against *ex post facto* action is based is a fundamental concept of constitutional liberty embodied in the due process clauses of the respective Constitutions.

constraints—is a long step toward regaining lost freedom.

\*    \*    \*    \*    \*    \*

"[A] repealer of parole eligibility previously available to imprisoned offenders would clearly present the serious question under the *ex post facto* clause ... of whether it imposed a 'greater or more severe *punishment* than was prescribed by law at the time of the ... offense.'["]

\*    \*    \*    \*    \*    \*

In *Rodriguez* [*v. U.S. Parole Comm'n,* 594 F.2d 170 (7th Cir.1979) ], the court emphasized that it was immaterial that the imprisoned offender might not have received parole at the time of his eligibility. It was, rather, the right of the prisoner to satisfy eligibility conditions, and thus earn the right to demonstrate fitness for parole, which could not be retroactively affected to the inmate's disadvantage.

*Adkins, supra,* 164 W.Va. at 296–97, 262 S.E.2d at 887 (citations omitted).

In *Akins v. Snow,* 922 F.2d 1558 (11th Cir.1991), a federal court of appeals struck down a Georgia parole board rule as violative of *ex post facto* principles. The rule that allowed the parole board to increase the length of time between parole hearings to 8 years was a change from the annual review that was prescribed by parole board rules in place when the prisoner committed his offense.

In *Akins,* the federal court stated that a key issue was whether a prisoner who committed an offense when a previous rule was in effect was "deprived of an opportunity for parole that existed prior to the alteration of the parole rules." 922 F.2d at 1562. *But see Jones v. Georgia State Bd. of Pardons and Paroles,* 59 F.3d 1145, 1149 n. 8 (11th Cir. 1995) (questioning the continued viability of *Akins,* in light of *California Dep't of Corrections v. Morales,* 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), *see infra.*)

In *Kellogg v. Shoemaker,* 46 F.3d 503 (6th Cir.1995), a federal court of appeals found that new and more onerous Ohio parole revocation procedures could not be retroactively applied to prisoners who had committed offenses when other, less onerous revocation procedures were in effect.

Recently, in *Lynce v. Mathis,* 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), the United States Supreme Court applied *ex post facto* principles to prohibit Florida's retroactive cancellation of early release credits. However, 2 years before deciding *Lynce,* in *California Dep't of Corrections v. Morales, supra,* 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), the Supreme Court declined to strike down a California statute that retroactively changed the frequency of parole review for a very limited class of prisoners.

In *Morales,* the statute allowed the parole board to grant "setoffs" of 3 years (a "setoff" is a term used to describe the time until the next parole review that is given by a parole board when it denies parole to a prisoner) to a small group of prisoners who had been convicted of more than one offense that involved taking a life. These multiple-homicide prisoners had been sentenced under laws requiring an annual parole review.

The Supreme Court in *Morales* found that the retroactive application of the California 3–year–setoff statute for multiple-homicide prisoners created "only the *most speculative and attenuated possibility* of producing the prohibited effect of increasing the measure of punishment for covered crimes ... [and] *applies only to a class of prisoners for whom the likelihood of release on parole is quite remote.*" 514 U.S. at 509–10, 115 S.Ct. at 1603, 131 L.Ed.2d at 597 (emphasis added).

The Court also noted that the California statute required a finding that there was no likelihood of a parole for an individual prisoner within the year after parole denial, and that a prisoner receiving an extended setoff had the right to ask for review before the end of their setoff period. 514 U.S. at 508–09, 513, 115 S.Ct. at 1602–03, 1605, 131 L.Ed.2d at 596, 599.

Unlike the statute at issue in the *Morales* case, *W.Va.Code,* 62–12–13(a)(5) [1997] applies to the entire population of prisoners in this state who are serving a life sentence with the possibility of parole (approximately 300 persons). Nothing in the record of the instant case suggests that the "likelihood of

parole" for members of this class is "quite remote." *Morales, supra.* Indeed, it is certain that a significant number (if not the majority) of the members of this class will at some time be released on parole. Additionally, the 1997 proviso added to *W.Va.Code,* 62-12-13(a)(5) [1997] contains no requirement that the Board articulate reasons for giving a prisoner a longer than 1 year setoff. Nor does our statute contain provisions allowing a prisoner who is given such a setoff to ask for a review hearing at an earlier date, if conditions change.

How to specifically apply the *Morales* decision to parole law changes, in cases arising under the *ex post facto* clause of the *United States Constitution,* is somewhat unclear. For example, in *Roller v. Gunn,* 107 F.3d 227 (4th Cir.1997) (*Roller II* ), the majority of a three-judge panel, applying *Morales,* held that retroactive application of changes in South Carolina's parole laws did not violate the *ex post facto* clause. *See also Hill v. Jackson,* 64 F.3d 163 (4th Cir.1995) (relying on *Morales* to uphold a retroactive change to the frequency of parole review in Virginia.) *See also Jones, supra,* 59 F.3d at 1149 n. 8.

However, in *Roller II,* Senior Judge K.K. Hall persuasively argued in dissent that applying *Morales,* the South Carolina changes did indeed violate the federal *ex post facto* clause, because they "decreas[e] the likelihood of release on parole to a degree that offends the Ex Post Facto Clause." 107 F.3d at 240. (In *Roller v. Cavanaugh,* 984 F.2d 120 (4th Cir.1993) (*Roller I* ), Judge Hall,

writing for a unanimous panel pre-*Morales,* had prohibited the retroactive application of South Carolina parole law changes under *ex post facto* principles).

Moreover, some jurists who have applied *Morales* to permit the retroactive imposition of "speculative" disadvantages on prisoners with respect to their eligibility for release have found that they were reading *Morales* too broadly. *See Calamia v. Singletary,* 686 So.2d 1337 (Fla.1996) (upholding retroactive cancellation of release credits), *vacated and remanded,* 520 U.S. 1141, 117 S.Ct. 1309, 137 L.Ed.2d 473 (1997), *rev'd* 694 So.2d 733 (Fla. 1997) (on remand from the United States Supreme Court after issuance of the opinion in *Lynce v. Mathis, supra.*) [4]

■ We certainly understand and appreciate the force of the argument of the State of West Virginia in the instant case, to the effect that the statutory proviso that petitioner Carper challenges can be applied narrowly and in a constitutionally acceptable fashion, as a narrowly tailored mechanism for reducing the frequency of truly "pointless" parole hearings for those individual life-term prisoners who the Board determines are certainly not going to be paroled within a year after a parole denial, absent extraordinary circumstances.[5] And of course, it is our duty to construe statutes in a constitutionally acceptable fashion if at all possible. Syllabus Point 3, *Donley v. Bracken,* 192 W.Va. 383, 452 S.E.2d 699 (1994).

---

**4.** This uncertainty in federal *ex post facto* jurisprudence, and a due regard for our historic position that *ex post facto* protections must be strictly applied to prohibit legislation that retroactively enhances punishment for crimes (*see Adkins v. Bordenkircher, supra* ), lead us to decline to express wholesale approval for cases like *Roller II, supra, Hill v. Jackson, supra,* and *Jones v. Georgia State Bd. of Pardons and Paroles, supra*— cases that seem to take an uncritically tolerant approach to broad and clearly disadvantageous retroactive changes in parole eligibility provisions. A stricter approach, as exemplified in *Akins v. Snow, supra, Kellogg v. Shoemaker, supra, Roller v. Cavanaugh, supra,* and Senior Judge Hall's dissent in *Roller II, supra,* is more consistent with the approach that this Court has historically taken to these issues.

Additionally, we note that in the instant case, a retroactive increase in parole review frequency from annual review to up to 3 years, even with the safeguards that we require in this case to meet constitutional muster, presses the constitutionally permissible limit.

**5.** It is true that many prisoners serving life terms with the possibility of parole have committed heinous offenses. But it is precisely our treatment of such persons that tests our legal system's commitment to an exacting standard of fairness. As Winston Churchill (while serving as Home Secretary) said in 1910: "[T]he treatment of crime and criminals measure the stored-up strength of a nation, and are the sign and proof of the living virtue in it." M. Gilbert, *In Search of Churchill,* 269 (Harper Collins, 1993), *quoted in U.S. v. Gorski,* 47 M.J. 370, 376 (1997), Sullivan, Judge, concurring.

Based on the foregoing discussion, we determine that we can take an appropriately deferential approach to the challenged statute's constitutionality, act consistently with the Supreme Court's decision in *Morales*, and at the same time adhere to and reinforce our historically strict approach to constitutional *ex post facto* jurisprudence, by grounding our ruling in the instant case on the provisions of our state constitutional provision prohibiting *ex post facto* laws, Article III, Section 4, and by requiring reasonable safeguards in the retroactive application of the statute to prisoners like petitioner Carper.[6]

Based upon the foregoing reasoning, we determine that under the *ex post facto* clause of the *West Virginia Constitution*, Article III, Section 4, the 1997 amendment to *W.Va.Code*, 62–12–13(a)(5) [1997] that allows parole review hearings to be conducted within a period of up to 3 years following the denial of parole for prisoners serving sentences of life imprisonment with the possibility of parole may be applied retroactively to prisoners whose relevant offenses occurred prior to the effective date of the statutory amendment.

However, to pass constitutional muster under the *ex post facto* clause of the *West Virginia Constitution*, Article III, Section 4, the provisions of *W.Va.Code*, 62–12–13(a)(5) [1997] allowing up to 3 years between parole reviews for prisoners serving terms of life imprisonment with the possibility of parole must be applied on a case-by-case basis to prisoners whose offenses occurred at a time when the law prescribed annual parole reviews. The Board of Parole may only extend the period between parole review hearings for such prisoners beyond 1 year if the Board has made a case-specific individualized determination with reasoned findings on the record showing why there will be no detriment or disadvantage to the prisoner from such an extension. Additionally, due process requires that such a prisoner receiving a review period of more than 1 year must be afforded the opportunity to submit information for the Board's consideration during any extended period requesting that a review be granted before the expiration of the extended period.

6. "States have the power to interpret state constitutional guarantees in a manner different than the United States Supreme Court has interpreted comparable federal constitutional guarantees. *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975)." *Peters v. Narick*, 165 W.Va. 622, 628 n. 13, 270 S.E.2d 760, 768 n. 13 (1980).

This Court has determined repeatedly that the *West Virginia Constitution* may be more protective of individual rights than its federal counterpart. *See, e.g., State v. Bonham*, 173 W.Va. 416, 317 S.E.2d 501 (1984). As Justice Workman stated in *Women's Health Center of West Virginia, Inc. v. Panepinto*, 191 W.Va. 436, 442, 446 S.E.2d 658, 664 (1993):

In *Bonham*, this Court noted that, "the United States Supreme Court has ... recognized that a state supreme court may set its own constitutional protections at a higher level than that accorded by the federal constitution." ... Based on the principle that " '[t]he provisions of the Constitution of the State of West Virginia may, in certain instances, require higher standards of protection than afforded by the Federal Constitution[,]' Syllabus Point 2, *Pauley v. Kelly*, 162 W.Va. 672, 255 S.E.2d 859 (1979) ...'" we ruled in *Bonham*, that this state's due process clause affords a criminal defendant greater protections than the federal counterpart... (holding that imposition of more severe sentence following trial de novo

does violate defendant's due process rights); *see also West Virginia Citizens Action Group v. Daley*, 174 W.Va. 299, 324 S.E.2d 713 (1984) (state constitution compels striking limitation on soliciting after sunset even if federal constitution does not); *Woodruff v. Board of Trustees of Cabell Huntington Hospital*, 173 W.Va. 604, 611, 319 S.E.2d 372, 379 (1984) (Article III, § 1 "more stringent in its limitation on waiver [of fundamental rights] than is the federal constitution"); *Pushinsky v. West Virginia Board of Law Examiners*, 164 W.Va. 736, 266 S.E.2d 444 (1980) (recognizing that state constitution imposes more stringent limitations on power of state to inquire into lawful associations and speech than those imposed by federal constitution); *Pauley v. Kelly*, 162 W.Va. 672, 707, 255 S.E.2d 859, 878 (1979) (ruling that education is a "fundamental constitutional right"); *see generally* Justice Thomas B. Miller, *The New Federalism in West Virginia*, 90 W.Va.L.Rev. 51 (1987–88).

The provision of enhanced guarantees for "the enjoyment of life and liberty ... and safety" by our state constitution both permits and requires us to interpret those guarantees independent from federal precedent. W.Va. Const. art. III, § 1. Accordingly, we are not bound by federal precedent in interpreting issues of constitutional law arising from these enhanced guarantees.
(Citations omitted.)

■ The actions of the Board in this regard, of course, are subject to the same "abuse of discretion/arbitrary and capricious" review standard that is applied to the Board's other determinations. *Tasker v. Mohn,* 165 W.Va. 55, 267 S.E.2d 183 (1980). We further conclude that as to prisoners other than petitioner Carper, our ruling in the instant case is to be applied prospectively.

## IV.

### Conclusion

In the instant case, we have a scant record with respect to the Board's decision to give Mr. Carper a 2–year setoff. We deny the requested writ of mandamus insofar as Mr. Carper asks us to require the Board to give him an annual parole review. We grant the writ to the extent that the Board is required to make an individualized determination with respect to any extension of Mr. Carper's review period beyond 1 year, and to otherwise act in accordance with the principles enunciated in this opinion.

Writ Granted as Moulded.

DAVIS, Chief Justice, dissenting:

(Filed Dec. 14, 1998)

This case presented a classic violation of the Ex Post Facto Clause contained in Article II, Section 4 of the West Virginia Constitution. The majority opinion perpetuates the violation by contending that it is following the guidelines established by the United States Supreme Court in *California Department of Corrections v. Morales,* 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (Stevens, J., and Souter, J., dissenting). I do not read *Morales* as authorizing any state judiciary or legislative body to, in effect, repeal its constitutional Ex Post Facto Clause. Therefore, based upon the following analysis, I respectfully dissent.

### *The Majority Concedes That Retroactive Application Of W. Va.Code § 62–12–13(a)(5) (1997) Violates The Ex Post Facto Clause*

The issue presented to this Court was straightforward and uncomplicated. The pe-

titioner sought a writ of mandamus to compel the West Virginia Parole Board (hereinafter "the Board") to review him for parole on an annual basis consistent with the language of W. Va.Code § 62–12–13 pre-existing the statute's 1997 amendment. In his petition, the petitioner argued that the Ex Post Facto Clause prohibited application of the 1997 version of W. Va.Code § 62–12–13 because it impermissibly increased his punishment by allowing the Board to conduct only tri-annual parole hearings. The majority opinion cited approvingly Syllabus point 1 of *Adkins v. Bordenkircher,* 164 W.Va. 292, 262 S.E.2d 885 (1980), which held:

Under ex post facto principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him.

From this reference, it appears that the majority opinion could not ignore the *force of clarity* pronounced in *Adkins.* Thus, the majority opinion implicitly conceded that, as written, W. Va.Code § 62–12–13(a)(5) would violate the Ex Post Facto Clause if given retroactive application. Instead of dispensing with the issue based upon this implicit finding, however, the majority decided to do what, in effect, only the Legislature could do—amend the statute to meet the minimum standard permitted by *Morales.*

### *The United States Supreme Court Did Not Amend Any Statute In Morales*

Upon implicitly concluding that the Ex Post Facto Clause barred retroactive application of W. Va.Code § 62–12–13(a)(5), the majority opinion further concluded that "we can take an appropriately deferential approach to the challenged statute's constitutionality, [and] act consistently with the Supreme Court's decision in *Morales* ... by requiring reasonable safeguards in the retroactive application of the statute[.]" The problem with this conclusion is that it is inconsistent with *Morales.*

In *Morales,* the defendant had two separate convictions for murder. Both convictions occurred at a time when the law in

California required annual parole hearings. Several years after the defendant's last murder conviction, the California legislature changed the frequency of parole hearings. The defendant argued that the retroactive application of the amended statute violated the federal Ex Post Facto Clause. The United States Supreme Court disagreed based upon very specific provisions that *were part of the statute addressed* in *Morales*. First, *Morales* found that California's statute stated explicitly that it applied only to "those prisoners who have been convicted of 'more than one offense which involves the taking of a life.'" *Morales*, 514 U.S. at 510, 115 S.Ct. at 1603. In the instant proceeding, the majority opinion conceded that W. Va.Code § 62–12–13(a)(5) applies to *all* prisoners serving a life sentence. Common sense dictates that the narrowly tailored statute in *Morales* and the all-inclusive statute in the instant proceeding require different outcomes. Second, in *Morales*, the California statute explicitly provided that it had "no effect on any prisoner unless the Board has first concluded, after a hearing, not only that the prisoner is unsuitable for parole, but also that 'it is not reasonable to expect that parole would be granted at a hearing during the following years.'" *Morales*, 514 U.S. at 510, 115 S.Ct. at 1604. The majority opinion in the case *sub judice* has conceded that W. Va.Code § 62–12–13(a)(5) provides absolutely no guidance to the Board in making the decision to deny annual parole review. This blatant distinction further mandates that the outcome for the two statutes be different.

The Supreme Court summed up its decision in *Morales* by holding that California's statute did not violate the federal Ex Post Facto Clause as follows:

> In light of the particularized findings required under the [statute] and the broad discretion given the Board, the narrow class of prisoners covered by the amendment cannot reasonably expect that their prospects for early release on parole would be enhanced by the opportunity of annual hearings. For these prisoners, the [statute] simply allows the Board to avoid the futility of going through the motions of reannouncing its denial of parole suitability on a yearly basis.

*Morales*, 514 U.S. at 512, 115 S.Ct. at 1604. The majority opinion purports to apply *Morales* to the facts of the case before it. Yet, the majority opinion can point to only one similarity between the California statute under consideration in *Morales* and W. Va.Code § 62–12–13(a)(5). Each law retroactively decreased the frequency of parole hearings. The Supreme Court did not base its decision to allow California's statute to pass federal constitutional muster on the mere fact that it retroactively decreased the frequency of parole hearings. In *Morales*, the Supreme Court relied on specific provisions in California's statute that provided a basis for departing from federal precedent previously barring such statutes. *See Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *Warden v. Marrero*, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974). In this regard, California's statute explicitly stated that it was not to be allowed carte blanche application. Rather, it was to be applied only to prisoners who had been convicted of multiple murderers and only after the Board conducted a hearing and determined that it was not reasonable to expect that such prisoners would be granted parole in the following years. Moreover, the California statute mandated that these specific findings be made *before* the statute could be retroactively applied. The Supreme Court did not invent these criteria—they were included in the California statute.

In all respects, the California legislature, not the California Supreme Court, crafted the language and conditions in the statute that convinced the United States Supreme Court that it should be upheld. In contrast, the West Virginia statute complained of in the case *sub judice* provides that "the board may reconsider and review parole eligibility any time within three years following the denial of parole of a person serving a life sentence." W. Va.Code § 62–12–13(a)(5). These few words, which bear no real similarity to the California statute upheld in *Morales*, have been used by the majority to conclude that their actions are consistent with that case. Such illogical reasoning by the majority, in my judgment, not only violates this State's Ex Post Facto clause, but

also defiles the federal Ex Post Facto Clause. *See Miller v. Warden*, 112 Nev. 930, 921 P.2d 882 (Nev.1996) (finding, under *Morales*, that federal Ex Post Facto Clause was violated by new law revoking power of parole board to commute sentence of defendants convicted of first degree murder).

### *The Majority's Amendment To W. Va.Code § 62–12–13(a)(5) Provides Absolutely No Standards To Guide The Board's Discretion*

As I have indicated, in my judgment, the decision rendered by the majority opinion is inconsistent with both the federal and state ex post facto clauses. Two factors guide me to this conclusion.

First, the majority opinion has purportedly given the Board the authority to apply W. Va.Code § 62–12–13(a)(5) on a case-by-case basis. I have absolutely no idea what the majority means by such a ruling. I do know, however, what the consequences will be from such unbridled discretion. This Court will be inundated with legitimate appeals from prisoners alleging they have been unfairly discriminated against by the Board's decision to deny them annual parole review. I simply cannot understand how the majority convinced itself that it could allow the Board to create, on an *ad hoc* whimsical basis, reasons for denying or allowing annual parole review. In *Morales,* a statutory standard existed which narrowed the class of prisoners to encompass solely multiple murderers who were not reasonably expected to be granted parole. Neither the majority opinion nor the West Virginia statute provides any guidance to the Board by identifying the class of prisoners to whom it may deny annual parole review. The net result of this dangerous decision is that this Court will be forced to once again legislate without a compass. This Court will have to create, as the cases come before us, standards for denying and approving annual parole reviews. We are not the Legislature. It is not within this Court's power to create a body of law to breathe *Morales*-type life into W. Va.Code § 62–12–13(a)(5). If the majority truly had followed

*Morales,* it would have barred application of W.Va.Code § 62–12–13(a)(5), as the West Virginia statute does not meet the minimal narrow standard approved by *Morales.*

Second, contrary to *Morales,* the majority opinion has permitted W. Va.Code § 62–12–13(a)(5) to be applied retroactively to all parole eligible prisoners serving life sentences. By contrast, the primary basis for *Morales'* deviation from federal precedent was the extremely narrow subgroup of prisoners to which California's statute applied, *i.e.,* multiple murderers. The limitations of the *Morales* decision were explained by the United States Supreme Court in *Lynce v. Mathis,* 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997)[1]. In *Lynce* the Court stated that, under *Morales,* the relevant inquiry is whether the " 'change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.' " *Lynce,* 519 U.S. at 443, 117 S.Ct. at 897 (quoting *Morales,* 514 U.S. at 506 n. 3, 115 S.Ct. at 1602 n. 3). *Lynce* reiterated the *Morales* court's finding " 'there is no reason to conclude that the amendment will have any effect on any prisoner's actual term of confinement." ' *Lynce,* 519 U.S. at 444, 117 S.Ct. at 897 (quoting *Morales,* 514 U.S. at 511, 115 S.Ct. at 1604). According to the *Lynce* court, *Morales* unequivocally concluded that, " 'a prisoner's ultimate date of release would be entirely unaffected by the change in the timing of suitability hearings." ' *Lynce,* 519 U.S. at 444, 117 S.Ct. at 897 (quoting *Morales,* 514 U.S. at 513, 115 S.Ct. at 1605). In the final analysis, *Lynce* found *Morales* to be constitutional only because California's statute had no impact on the actual punishment imposed upon the multiple murderers who were subject to the statute. In contrast, the West Virginia statute *will* impact upon the actual punishment of *all* prisoners sentenced to life with mercy.

---

1. The decision in *Lynce* held that a state statute, which retroactively canceled provisional early release credits awarded to alleviate prison over-

crowding, violated the Ex Post Facto Clause by increasing the prisoners' punishment.