# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**September 2, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Dennis Burch,**
**Petitioner Below, Petitioner**

**vs)  No. 15-1091** (Kanawha County 14-P-613)

**Marvin Plumley, Warden,**
**Huttonsville Correctional Center, and**
**West Virginia Parole Board,**
**Respondents Below, Respondents**

## MEMORANDUM DECISION

Petitioner Dennis Burch, pro se, appeals the October 8, 2015, order of the Circuit Court of Kanawha County denying his petition for a writ of habeas corpus which challenged a denial of parole. Respondents Marvin Plumley, Warden, Huttonsville Correctional Center, and West Virginia Parole Board, by counsel Benjamin Freeman, filed a summary response to which petitioner filed a reply.[1]

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 3, 1996, Petitioner shot his wife's lover six times in the torso. Following petitioner's indictment, a jury found him guilty of first degree murder and made a recommendation of mercy. Accordingly, petitioner was sentenced to a life term of incarceration with a possibility of parole after fifteen years. Shortly thereafter, the West Virginia Division of Corrections ("DOC")

---

[1]Petitioner also filed a motion to strike respondents' summary response on the ground that it was not responsive to his assignments of error. Upon review, we find that respondents' summary response was responsive to petitioner's assignments of error. Accordingly, we deny petitioner's motion to strike.

compiled a report regarding petitioner's crime that was received by Respondent West Virginia Parole Board ("board") on June 30, 1997. In that report, the DOC related that the responding officer reported that the victim was shot in both the face and the torso. The DOC also reported that police collected a number of witness statements indicating that petitioner had previously threatened the victim. On May 20, 1998, petitioner was psychologically evaluated for purposes of his classification within the prison system. As part of that evaluation, petitioner submitted to a personality test which indicated that "[petitioner] attempted to create an unrealistically favorable impression of himself." Individuals with similar personality profiles are generally described "as being immature, self-centered, [and] lacking in insight[.]"

Petitioner became eligible for parole in 2012. In preparation for his most recent parole interview on October 21, 2013, petitioner participated in a pre-parole report on August 1, 2013. As part of that report, petitioner stated that his prior criminal record consisted of one speeding ticket. Petitioner also expressed "no hard feelings" against the prosecutor in the underlying murder case and stated that the judge and the arresting officer were doing their jobs. Petitioner stated that he made "a terrible mistake" by killing the victim and that he was "sorry for the heartache" he caused. Both the audio recording and the transcript of petitioner's October 21, 2013, parole interview reflected that the board previously reviewed petitioner's records.[2]

The board asked petitioner about accounts in the record that indicated that he previously threatened the victim. Petitioner denied making any threats, stating that he just called and talked to the victim in an effort to persuade him not to "destroy [his] family." At the conclusion of petitioner's parole interview, the board completed a risk assessment and found that petitioner was "low risk" given factors such as his age (over fifty) and positive prison work record. Nonetheless, the board denied parole to petitioner and found that he would not be interviewed again until 2016. The board explained that "[petitioner's] interview has not convinced this board [that petitioner's] release would be compatible [with] or in the best interests of anybody in society." The board found that (1) petitioner had no capacity to reintegrate into society; (2) petitioner still had the potential for future violence; and (3) petitioner committed a willful act of violence against another person that warranted "extended parole consideration." Finally, the board informed petitioner of his right to submit information showing that he should be re-interviewed at an earlier date.

Petitioner filed an administrative appeal from the board's decision. The board's chairperson denied the appeal on August 22, 2014, and also denied petitioner's request to be provided with information regarding community and official sentiment toward his possible parole. On December 14, 2014, petitioner filed a petition for a writ of habeas corpus challenging the board's October 21, 2013, decision to deny parole and not to re-interview him until 2016. Petitioner argued that he was entitled to a parole hearing that comported with due process of law. Petitioner also filed a motion for discovery and a motion for appointment of counsel. Petitioner

[2]Petitioner submitted the transcript of the October 21, 2013, parole interview as part of the appendix; however, the transcript was incomplete. By order entered July 18, 2016, at this Court's direction, the record was supplemented with the audio recording of petitioner's October 21, 2013, parole interview pursuant to Rule 6(b) of the West Virginia Rules of Appellate Procedure.

alleged that other murder convicts were granted parole despite having more extensive criminal and disciplinary records than his. Thus, petitioner argued that an attorney should review every case in which parole was granted to an inmate convicted of first degree murder since 2010 to determine if those cases were similar to his case. By order entered October 8, 2015, the circuit court denied petitioner's habeas petition and his motions for discovery and appointment of counsel. The circuit court found that "the grounds alleged do not entitle [petitioner] to the relief sought" or to the information "that petitioner claims he is entitled to receive as discovery." Petitioner now appeals the circuit court's October 8, 2015, order denying his habeas petition.

We apply the following standard of review in habeas appeals:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

The circuit court did not err in denying
petitioner's motions for discovery and for appointment of counsel.

Petitioner contends that his case needs to be compared with every case in which parole was granted to an inmate convicted of first degree murder since 2010. Given that inmates should not have access to each other's files, petitioner argues that an attorney needs to be appointed to conduct such a review. In Syllabus Point 3 of *State ex rel. Parsons v. Zakaib*, 207 W.Va. 385, 532 S.E.2d 654 (2000), we held, as follows:

> In proceedings under the West Virginia Post-Conviction Habeas Corpus Act, [West Virginia] Code §§ 53-4A-1 to -11, discovery is available only where a court in the exercise of its discretion determines that such process would assist in resolving a factual dispute that, if resolved in the petitioner's favor, would entitle him or her to relief.

Respondents argue that each inmate's case is different. Thus, respondents assert that the review that petitioner seeks would not aide in showing that he is entitled to the requested habeas relief. We agree and note the circuit court's correct finding that petitioner's alleged grounds for habeas relief entitled him neither to the discovery requested nor the ultimate relief sought.[3] Therefore, we conclude that the circuit court did not abuse its discretion in denying petitioner's motions for discovery and for appointment of counsel.

---

[3]As we explain, *infra*, we find that the circuit court correctly denied petitioner's habeas petition.

The circuit court did not err in denying
petitioner's habeas petition challenging the board's October 21, 2013, decision.

Petitioner challenges the board's October 21, 2013, decision on a number of grounds which we review under the following standards: "The decision to grant or deny parole is a discretionary evaluation to be made by the [board]. However, such a decision shall be reviewed by this Court to determine if the [board] abused its discretion by acting in an arbitrary and capricious fashion." Syl. Pt. 3, *Rowe v. Whyte*, 167 W.Va. 668, 280 S.E.2d 301 (1981) (citing *Tasker v. Mohn*, 165 W.Va. 55, 67, 267 S.E.2d 183, 190 (1980)). In addition, West Virginia Code § 62-12-13(e) provides that the board may delay re-interviewing inmates serving life terms of incarceration with the possibility of parole for up to three years. In Syllabus Point 3 of *State ex rel. Carper v. West Virginia Parole Board*, 203 W.Va. 583, 509 S.E.2d 864 (1998), we held that, for it to pass constitutional muster under the Ex Post Facto Clause of the West Virginia Constitution,[4] West Virginia Code § 62-12-13(e) "must be applied on a case-by-case basis to prisoners whose offenses occurred at a time when the law prescribed annual parole reviews."

Petitioner first contends that due process required the board to provide him with the information regarding community and official sentiment toward his possible parole. *See* Syl. Pt. 4, in part, *Tasker*, 165 W.Va. at 55, 267 S.E.2d at 184 (holding that, if no security concern exists to prevent disclosure, an inmate is entitled to access to information which will be used to determine whether he is paroled). We note that, shortly after we decided *Tasker*, we decided *Stanley v. Dale*, 171 W.Va. 192, 298 S.E.2d 225 (1982). In *Stanley*, the inmate argued that he was entitled to receive access to information regarding community sentiment. *Id.* at 194, 298 S.E.2d at 227. This Court rejected the inmate's argument, noting that a habeas petitioner bears the burden of proving that his petition has merit. *Id.*, at 194, 298 S.E.2d at 227-28. In *Stanley*, we found that the inmate failed to carry his burden of showing that he was prejudiced by the non-disclosure because "[w]e cannot say with any degree of certainty that the [board] would have granted parole to the [inmate] in the absence of their consideration of community sentiment." *Id.*, at 194-95, 298 S.E.2d at 227-28. In this case, we similarly find that petitioner failed to carry his burden of showing that he was prejudiced by the non-disclosure because the board did not base its decision on community and official sentiment, but on petitioner's responses during his parole interview.

Second, petitioner contends that certain factual errors tainted the board's decision to deny parole and not to re-interview him until 2016. However, upon our review of the record before us, we find that any factual misconceptions the board may have had did not materially impact or prejudice its decision in this case. Petitioner takes issue with two items he describes as factually incorrect in the record: (1) that petitioner shot the victim in the face; and (2) that petitioner abused alcohol. In a 1997 report, the DOC describes the presentation of the victim's body as suggesting that he suffered gunshots to both the face and the torso. The board gave petitioner an opportunity to make clarifications and correct any errors in the record. Petitioner corrected the board's misconception that the victim was shot in the face, stating that "it wasn't in the face." However,

_____

[4]The Ex Post Facto Clause of the West Virginia Constitution is found in article III, § 4.

4

based on our review of the audio recording and hearing transcript, we find that, in fact, the board was concerned about the number of times petitioner shot the victim (six times), and not in the location of the wounds.

According to petitioner's psychological evaluation, petitioner consumed alcohol as a young adult. During the hearing, the board asked petitioner whether he had any problem with drugs or alcohol, to which petitioner answered, "no." Petitioner notes that, on the risk assessment, the board gave him one point for drug and alcohol use. However, we find that, even if the board gave that point in error, petitioner's overall score was still "-2" which classified him as "low risk." Therefore, we conclude that petitioner corrected any factual errors the board may have had with regard to his alcohol abuse; alternatively, even assuming otherwise, the board's misconceptions did not prejudice petitioner.

Finally, petitioner contends that the board acted arbitrarily in denying him parole and failed to base its decision to delay his next parole interview until 2016 on a "case-specific individualized determination." Syl. Pt. 3, in part, *Carper*, 203 W.Va. at 585, 509 S.E.2d at 886. We disagree. In its report, the DOC informed the board that the police collected a number of witness statements that petitioner threatened the victim prior to the incident during which petitioner shot him. When the board questioned petitioner about those accounts at his parole interview, petitioner denied that he threatened the victim. We note that the board was able to see petitioner and observe his demeanor during his interview. Thus, we find that the board was in a position to judge petitioner's credibility. *See State v. Guthrie*, 194 W.Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) (noting that an appellate court may not review credibility determinations). We note the board's finding that it was "[petitioner's] interview" that "has not convinced this board [that petitioner's] release would be compatible [with] or in the best interests of . . . society." We note that, according to petitioner's psychological evaluation, petitioner is capable of "attempt[ing] to create an unrealistically favorable impression of himself." The report noted that individuals with similar personality profiles are generally described "as being immature, self-centered, [and] lacking in insight[.]" Therefore, we find that petitioner's responses at his parole interview—which both contradicted the record and reflected tendencies observed during petitioner's psychological evaluation—provided the board with an adequate, case-specific basis for its decision. Accordingly, we conclude that the board did not abuse its discretion in denying parole to petitioner and delaying his next parole interview until 2016.

For the foregoing reasons, we affirm the circuit court's October 8, 2015, order denying petitioner's habeas petition challenging the board's October 21, 2013, decision. The Clerk of this Court is directed to issue the mandate in this matter forthwith.[5]

Affirmed.

**ISSUED:** September 2, 2016

---

[5]Petitioner's next parole interview is scheduled for October of 2016.

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II