**FILED**
**June 16, 2021**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-1023, *State of West Virginia ex rel. Scott Phalen v. Craig Roberts*

**Armstead, Justice, dissenting, joined by Chief Justice Jenkins:**

It is unfortunate that, due to a mistake or clerical error, the Petitioner in this case was erroneously released on parole and subsequently reincarcerated due to such error. Nevertheless, based upon my review of applicable law and the policies promulgated by the West Virginia Division of Corrections and Rehabilitation (DCR), I do not believe that inmates, such as Petitioner, who are incarcerated for violating the conditions of their extended supervised release, are eligible for parole nor are they entitled to receive commutation from their sentences for good time served. Therefore, I respectfully dissent from the majority's decision.

Petitioner pled guilty to one count of first-degree sexual abuse and, in 2012, was sentenced to one to five years in prison followed by fifteen years of extended supervised release.[1] Pursuant to West Virginia Code § 62-12-26(a), the circuit court had

---

[1] Petitioner's term of imprisonment was imposed pursuant to West Virginia Code § 61-8B-7 (2006). Supervised release is governed by West Virginia Code § 62-12-26(a), which provides in pertinent part, as follows:

> Notwithstanding any other provision of this code to the contrary, any defendant convicted [of] … a felony violation of the provisions of § 61-8B-1 *et seq.*, … of this code shall, as part of the sentence imposed at final disposition, be required to serve, in addition to any other penalty or condition imposed by the court, a period of supervised release of up to 50 years: *Provided*, That the period of supervised release imposed by the court pursuant to this section … shall be no less than 10 years … *And Provided further*, That pursuant to the provisions of subsections (a) and (h) of this section, a court may modify,

1

no discretion in whether to impose a term of supervised release. After discharging his prison sentence, Petitioner began the period of his supervised release.[2] Less than six months after being discharged from prison, Petitioner violated his extended supervised release. Accordingly, his term of supervised release was revoked, and he was remanded to serve five years in prison. After discharging the five-year sentence, Petitioner was released to complete his extended supervised release. Approximately two months later, he was once again charged with violating his extended supervised release. He was then placed in the custody of the DCR for ten years for this second violation.[3] Petitioner was improvidently released on parole due to a "clerical error" for this violation on June 29, 2020.

DCR conducted a review of good time and parole eligibility and, as a result, issued Policy Directive Number 151.06 on or about November 23, 2020. Policy Directive 151.06 established that certain inmates, including inmates who were incarcerated "pursuant to revocation of extended supervision for sex offenders/child abusers," were not entitled to

---

terminate, or revoke any term of supervised release imposed pursuant to this subsection.

W. Va. Code § 62-12-26(a). As the majority opinion observes, W. Va. Code § 62-12-26 has been amended since the time the Petitioner was sentenced for the underlying crime. Though I disagree with the majority's understanding of this statute, I agree that the amendments are not relevant to Petitioner's case. Accordingly, and like the majority, I cite to the 2020 version of the statute, which is now in effect.

[2] Pursuant to West Virginia Code § 62-12-26(d), supervised release begins "upon the expiration of any period of probation, the expiration of any sentence of incarceration or the expiration of any period of parole supervision imposed or required of the person so convicted, whichever expires later."

[3] DCR contends that Petitioner did not commit a new crime.

2

"receive day-for-day good time for incarceration."  Petitioner was deemed to have been released due to a clerical error or mistake and was arrested and incarcerated at South Central Regional Jail.  DCR argues, and I agree, that Policy Directive 151.06 was required to bring DCR's analysis of offender incarcerations in line with legislative enactments.

### Parole Eligibility

An inmate's eligibility for parole is outlined in West Virginia Code § 62-12-13.  *See* W. Va. Code § 62-12-13(b)(2021).[4]  Of particular importance to the instant case is the requirement that, in order to be released on parole, an inmate must have "served the minimum term of his or her indeterminate *sentence* or has served one fourth of his or her definite term *sentence*, as the case may be[.]" W. Va. Code § 62-12-13(b)(1)(A) (emphasis added).    In this case, the majority simply finds that Petitioner is eligible for parole *during his term of extended supervised release,* because he is an inmate and has served one fourth of his definite term of his *original term of incarceration* for the underlying crime.  But the analysis of W. Va. Code § 62-12-13(b)(1)(A) does not stop there.  I believe that the majority's conclusion does not take into consideration the fact that this statute is written in the context of the imposition of the original sentence and that the Petitioner, while on

---

[4] As the majority opinion observes, West Virginia Code § 62-12-13 has been amended numerous times since 2012, when Petitioner was sentenced for the underlying offense.  Though I disagree with the majority's understanding of this statute, I agree that the amendments are not relevant to Petitioner's case.  Accordingly, and like the majority, I cite to the 2020 version of the statute, which is now in effect.

supervised release and extended supervised release, was serving a sanction, not a sentence, as that term is used in W. Va. Code § 62-12-13(b)(1)(A).

This Court has previously described a sentence as "[t]he judgment formally pronounced by the court or judge upon the defendant after his conviction … usually in the form of … incarceration, or probation." *State ex rel. Goff v. Merrifield*, 191 W. Va. 473, 477, 446 S.E.2d 695, 699 (1994). In the instant case, Petitioner was sentenced in 2012 to one to five years in prison followed by fifteen years of supervised release for his conviction of first-degree sexual abuse. At the time of his re-incarceration, he had discharged his original sentence and was no longer subject to the sentence for his ***crime***. He then began serving his term of supervised release and then "extended supervised release." We know this because Petitioner's period of extended supervised release could only begin "upon the expiration of any period of probation, the expiration of any sentence of incarceration or the expiration of any period of parole supervision imposed or required of the person so convicted, whichever expires later." W. Va. Code § 62-12-26(d). This Court has previously described incarceration due to a violation of terms and conditions of extended supervised release as a "sanction." *See* Syllabus Point 7, *State v. Hargus*, 232 W. Va. 735, 753 S.E.2d 893 (2013). Therefore, because Petitioner had discharged the sentence for his crime, his reincarceration was clearly a ***sanction*** for failing to comply with the terms and conditions imposed upon him by the circuit court as a part of his extended supervised release.

The United States Court of Appeals for the Fourth Circuit has discussed, in the context of a term of supervised release imposed as part of a conviction for a federal offense, the distinction between the revocation of such supervised release and a criminal conviction, holding:

> [S]upervised release revocation proceedings are . . . not criminal proceedings, and a determination that a person violated the terms of supervised release does not amount to a conviction for a criminal offense. *See United States v. Hill*, 48 F.3d 228, 232 (7th Cir. 1995) ("The violation of a condition of supervised release is not a crime as such, but it is a ***breach of trust***, and a ground for revocation of supervised release." (citation and internal quotation marks omitted)).
>
> . . . .
>
> Moreover, "Congress intended supervised release to assist individuals in their transition to community life. ***Supervised release fulfills rehabilitative ends, distinct from those served by incarceration***." *United States v. Johnson*, 529 U.S. 53, 59, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000). If the goals of supervised release are to be met, it is critical that the defendant cooperate with his probation officer and comply with the conditions of supervised release. . . .

*United States v. Riley,* 920 F.3d 200, 208 (4th Cir.), *cert. denied,* 140 S. Ct. 391 (2019) (Internal citations omitted) (Emphasis added).  Courts are given broad discretion as to how to obtain compliance from offenders who violate the terms and conditions of their extended supervised release.  Courts "may" modify, terminate and revoke periods of extended supervised release.  W. Va. Code § 62-12-26(h).  Further, when a defendant is originally sentenced for the underlying crime, the imposition of a term of supervised release or extended supervised release does not impose or assume a term of incarceration.  The circuit court does not presume that individuals placed on supervised release or extended

5

supervised release will either violate the terms of their release or be incarcerated as a result of such violation. In this case, the circuit court imposed upon Petitioner a "determinate term of ten (10) years" of incarceration for his second violation of the terms of his extended supervised release. When it did so, the circuit court did not sentence Petitioner for his crimes. Indeed, that sentence of incarceration had been imposed by the circuit court years earlier and fulfilled by Petitioner prior to the date he began serving his original term of supervised release. Instead, it imposed a sanction for Petitioner's failure to comply, for a second time, with the terms and conditions of his term of supervised release.

In *Gregory v. West Virginia Div. of Corrections*, No. 11-1654, 2013 WL 500378 (W. Va. Feb. 11, 2013) (memorandum decision), this Court, in discussing similar concerns relating to defendants who violate terms of parole, found that: "[t]he parole supervision regulations, which petitioner agreed to abide by, were terms of mercy which allowed him to be released on parole. The regulations themselves did not disadvantage petitioner, ***his violation of those regulations caused his parole revocation and reimprisonment***." *Id.* at *13 (emphasis added). Like the defendant in *Gregory*, the Petitioner is serving a sanction for violating the "terms of mercy" which allowed him to be released on extended supervised release.

Study after study has shown that sex offenders have one of the highest likelihoods of reoffending once they are released from custody. *See Hensler v. Cross*, 210 W. Va. 530, 536, 558 S.E.2d 330, 336 (2001) ("We are aware that sex offenders are significantly more likely than other repeat offenders to reoffend with sex crimes or other

violent crimes and the tendency persists over time."). I believe that DCR correctly summarized the role of extended supervised release as "a long-term monitoring mechanism to ensure the offender's reintegration into society" and the parole statute as one that "rewards rehabilitative efforts and good behavior by changing the custodial arrangement from one of segregation from society to reintegration into society under supervision . . . prior to the full service of the mandatory incarceration period." This statute does not contemplate placing individuals who violate supervised release on parole. Petitioner served his original prison sentence. He was then sanctioned twice by the circuit court for failing to comply with the terms of his extended supervision. He clearly has not been rehabilitated, which is the cornerstone of our parole process. In fact, it makes no sense to reward a person who repeatedly cannot comply with the terms of extended supervised release by permitting them to be eligible for parole.

As the *Riley* court stated, "parole and supervised release are not just analogous, but virtually indistinguishable." *Riley*, 920 F.3d at 206. They serve similar purposes. Parole involves the early release of an inmate from incarceration, ***with continued supervision to ensure his or her compliance with probationary terms***. Supervised release involves the release of an inmate who has completed his or her term of incarceration, ***with continued supervision to ensure his or her compliance with probationary terms***. In light of this fact, it defies logic for a defendant to have his or her supervised release revoked and be incarcerated for violating the terms of such release, and then be placed on parole and released on terms similar to or identical to the terms he or she violated during their term of

supervised release. This essentially says, "let's put this inmate back in jail for refusing to obey the conditions of his supervised release but let him out early on parole subject to the same conditions." Presumably, the judge who holds the supervised release revocation hearing and revokes a defendant's supervised release, imposes a sanction for such violation designed to accomplish the rehabilitative goals of the supervised release. Again, regardless of the semantics used, whether it is called a "sentence," a "punishment" or a "term of incarceration," it constitutes a "sanction" as argued by the DCR. Accordingly, I disagree that Petitioner in this case, having had his supervised release twice revoked, is eligible for parole while incarcerated for such supervised release violations.

### Good Time and Senate Bill 713

Much like its argument as to the inapplicability of parole, DCR argues that Petitioner was not entitled to receive the benefit of good time served because he was serving a "sanction" for the violation of the terms and conditions of his extended supervised release, rather than a sentence. I agree. This interpretation was based upon the version of West Virginia Code § 15A-4-17(a) in effect just prior to April 30, 2021, which read as follows:

> All current and future adult inmates **sentenced to a felony** and, placed in the custody of the division, except those committed pursuant to § 25-4-1 et seq. of this code, shall be granted commutation from their sentences for good conduct in accordance with this section: Provided, That nothing in this section shall be considered to recalculate the "good time" of inmates currently serving a sentence or of giving back good time to inmates who have previously lost good time earned for a disciplinary violation, except for

8

> those inmates currently serving a sentence for a misdemeanor.

W. Va. Code § 15A-4-17(a) (2018) (Emphasis added). Again, as was discussed in *Riley*, "a determination that a person violated the terms of supervised release does not amount to a conviction for a criminal offense." *Riley*, 920 F.3d at 208. Applying this version of the statute to the present case, as Petitioner argues should apply, the defendant was ***not*** incarcerated for his "sentence to a felony" when the DCR denied application of good time served reductions. He had already fulfilled that sentence. Indeed, had he complied with the terms of his supervised release, he would not have been reincarcerated at all. I agree with the DCR that the statute does not permit application of good time served credit while an inmate is incarcerated for violating the terms of his or her supervised release or extended supervised release.

During the Regular Session of the 2021 Legislative Session, the West Virginia Legislature amended this statute and included language making it clear that individuals placed in the custody of the Commissioner of the Division of Corrections and Rehabilitation pursuant to W. Va. Code § 62-12-26 are ***not*** eligible for commutation of their sentences for good conduct, which is precisely the position DCR had previously taken in Policy Directive 151.06.

The current version of W. Va. Code § 15A-4-17(a), which became effective on April 30, 2021 reads as follows:

> All adult inmates placed in the custody of the Commissioner
> of the Division of Corrections and Rehabilitation pursuant to a

9

term of court-ordered incarceration for a misdemeanor or felony, ***except those committed pursuant to*** § 25-4-1 et seq. and ***§ 62-12-26 of this code***, shall be granted commutation from their sentences for good conduct in accordance with this section: *Provided*, That nothing in this section shall be considered to recalculate the "good time" of inmates currently serving a sentence or of giving back good time to inmates who have previously lost good time earned for a disciplinary violation: *Provided, however*, That as of the effective date of the amendments to this section enacted during the regular session of the Legislature, 2021, an inmate who had good time calculated into his or her release date prior to October 21, 2020, is entitled to the benefit of the good time awarded or earned before that date, unless the good time was lost due to a disciplinary violation.

W. Va. Code § 15A-4-17(a) (2021).

The majority has found that the above-quoted language of West Virginia Code § 15A-4-17(a) adopted by the Legislature in 2021 may not be applied to the Petitioner in this case because it would result in an unconstitutional *ex post facto* application of the statute. Therefore, the majority concludes "that S.B. 713, West Virginia Code § 15A-4-17, as amended, may not be applied to petitioner, whose underlying offense was committed in 2010, to preclude him from being granted commutation from his sentence for good conduct in accordance with that statute." For the reasons stated above, I don't believe the pre-2021 version of the statute would allow application of good time served in Petitioner's case. Likewise, the newly revised 2021 version expressly precludes application of good time served due to the fact that Petitioner is serving a term of incarceration for violating the terms of his extended supervised release imposed pursuant to W. Va. Code § 62-12-26. Therefore, I do not believe the majority's discussion of the *ex post facto* application of S.B. 713 is relevant to the present case.

Because I do not think the Court is required, under these facts, to make a determination as to whether application of S.B. 713 is barred by the prohibition of *ex post facto* principles, I would leave such determination to another case and another day. However, I do not think the question of *ex post* facto application is as clear-cut as the majority has determined.

> When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment. Point 3, Syllabus, *Willis v. O'Brien,* 151 W.Va. 628 [153 S.E.2d 178] [ (1967) ]. Syllabus Point 1, *State ex rel. Haden v. Calco Awning & Window Corp.,* 153 W.Va. 524, 170 S.E.2d 362 (1969). Syllabus Point 3, *Donley v. Bracken,* 192 W.Va. 383, 452 S.E.2d 699 (1994).

*State ex rel. Carper v. W. Va. Parole Bd.*, 203 W. Va. 583, 586, 509 S.E.2d 864, 867 (1998).

In *Carper*, this Court held that statutory changes that increased the period of time between parole hearings for prisoners serving life sentences "may be applied retroactively to prisoners whose relevant offenses occurred prior to the effective date of the statutory amendment" without violating the constitutional *ex post facto* protections of the West Virginia Constitution. *Id.*, 203 W. Va. at 590, 509 S.E.2d at 871. Moreover, the United States Supreme Court held, in *California Dept. of Corrections v. Morales*, 514 U.S. 499 (1995), that:

> Respondent . . . urges us to hold that the *Ex Post Facto* Clause forbids any legislative change that has any conceivable risk of affecting a prisoner's punishment. . . . Our cases have never accepted this expansive view of the *Ex Post Facto* Clause, and we will not endorse it here.
>
> . . . .

11

Indeed, contrary to the approach advocated by respondent, we have long held that the question of what legislative adjustments "will be held to be of sufficient moment to transgress the constitutional prohibition" *must* be a matter of "degree." In evaluating the constitutionality of the 1981 amendment, we must determine whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes. We have previously declined to articulate a single "formula" for identifying those legislative changes that have a sufficient effect on substantive crimes or punishments to fall within the constitutional prohibition, and we have no occasion to do so here.

*Id*. at 508-9 (internal citations omitted). While the parties to this action filed supplemental briefs following the passage by the Legislature and approval by the Governor of S.B. 713, the question of its constitutionality under *ex post facto* principles, and the degree to which it may affect defendants, has not been thoroughly addressed by the parties or reviewed by this Court. Moreover, because I do not believe such determination would change the result in this matter, I believe it is unnecessary for this Court to make such determination at this time.[5]

---

[5] Interestingly, the revisions to W. Va. Code § 15A-4-17 during the 2021 Legislative Session also made one other significant modification to this section, by adding "or supervised release under § 62-12-26 of this code" to subsection (g), which now states:

Each inmate, upon his or her commitment to, and being placed into the custody of, the commissioner, or upon his or her return to custody as the result of violation of parole under § 62-12-19 of this code, *or supervised release under § 62-12-26 of this code* shall be given a statement setting forth the term or length of his or her sentence or sentences and the time of his or her minimum discharge computed according to this section.

W. Va. Code § 15A-4-17(g) (2021) (emphasis added).

As stated above, I believe a person incarcerated for violating conditions of his or her supervised release is no longer serving the original sentence but is instead being sanctioned for failing to comply with the court-ordered conditions of supervised release. Therefore, neither the parole statute, nor the good time statute as it existed prior to 2021, permit Petitioner to receive good time served or to be eligible for parole during his period of incarceration for violating his supervised release or extended supervised release. Following the passage of S.B. 713, it is clear that good time reductions are inapplicable to Petitioner because his extended supervised release was imposed pursuant to W. Va. Code § 62-12-26, and the version of W. Va. Code § 15A-4-17 adopted during the 2021 Legislative Session expressly prohibits such application. The Constitutional protections against *ex post facto* application is not implicated where, under a proper reading of both

---

The addition of the term "supervised release" to this statute certainly implies, as I believe to be the case, that prior to the 2021 revisions the good time served provisions did not apply to inmates returned to incarceration for violations of supervised release. When reading a statute, what the Legislature chose *not* to say is often as important as what the Legislature chose to say. "Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Banker v. Banker*, 196 W. Va. 535, 547, 474 S.E.2d 465, 477 (1996). Moreover, when the Legislature changes a statute, we must assume that this change has meaning. As we have held for more that ninety years, "[t]he Legislature must be presumed to know the language employed in former acts, and, if in a subsequent statute on the same subject it uses different language in the same connection, the court must presume that a change in the law was intended." Syl. Pt. 2, *Hall v. Baylous,* 109 W.Va. 1, 153 S.E. 293 (1930).

This new language above appears to be added merely to provide a mechanism for calculating good time served in those limited instances in which the Legislature allowed good time served credits previously calculated prior to October 21, 2020, to be grandfathered in for those inmates. If, as the majority finds, the 2021 changes to the statute are inapplicable to Petitioner, this change would also be inapplicable to him.

the pre-2021 good time served statute and the revised version, Petitioner was not eligible to avail himself of the parole or good time provisions in our law. Indeed, far from violating Petitioner's rights, the Legislature acted with compassion when it allowed Petitioner to benefit from DCR's mistaken allocation of good time as of October 21, 2020. W. Va. Code § 15A-4-17(a).

For these reasons, I respectfully dissent from the majority's opinion. I am authorized to state that Chief Justice Jenkins joins me in this dissenting opinion.